UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LKQ CORPORATION, and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., | ) ) ) | 21 C 3166 |
| Plaintiffs, | ) ) | Judge Gary Feinerman |
| vs. | ) ) | |
| KIA AMERICA, INC., and KIA CORPORATION, | ) ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

LKQ Corporation and Keystone Automotive Industries, Inc. seek a declaratory judgment of non-infringement and invalidity of certain design patents owned by Kia America, Inc., and Kia Corporation. Doc. 1. Defendants move under Civil Rule 12(b)(2) to dismiss the suit for lack of personal jurisdiction, Doc. 23, and Plaintiffs cross-move for jurisdictional discovery, Doc. 28. Plaintiffs' motion is granted in part and denied in part, and Defendants' motion is entered and continued.

**Background**

In resolving a Rule 12(b)(2) motion, the court considers the complaint's well-pleaded factual allegations and the evidentiary materials submitted by both sides. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). No party has requested an evidentiary hearing, so the court must resolve any factual disputes in Plaintiffs' favor. *See ibid.* ("[W]here, as here, the issue [of personal jurisdiction] is raised on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdictional facts. We therefore accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes … in favor of the plaintiff.") (citation omitted); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003)

(similar).  The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.  *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted).  The facts are set forth as favorably to Plaintiffs as those materials allow.  *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

A.     **LKQ's Communications with Kia**

Plaintiffs, headquartered in Illinois, are in the business of importing and selling aftermarket automotive replacement and repair parts.  Doc. 1 at ¶¶ 1-2.  Defendants manufacture and sell automobiles and automobile parts under the Kia brand in the United States.  *Id.* at ¶¶ 3-4; Doc. 25 at ¶¶ 4-5.  Kia Corporation is incorporated and headquartered in South Korea. Doc. 1 at ¶ 4.  Kia America, a wholly owned subsidiary of Kia Corporation and the exclusive distributor of Kia-branded automobiles and parts in the United States, is incorporated and headquartered in California.  *Id.* at ¶ 3; Doc. 25 at ¶ 5.  From this point forward, the court will refer to Plaintiffs together as "LKQ," and to Kia Corporation and Kia America together as "Kia."

On January 20, 2021, Kia sent a letter to LKQ asserting that LKQ's headlamps, taillights, and front bumper cover replacement parts "appear to be either very similar to, or exact copies of," replacement parts sold by Kia.  Doc. 1 at ¶ 19; Doc. 1-1 at 2.  The letter noted that Kia "has received numerous … design patents that cover its" replacement parts and attached a list of fifteen such patents.  Doc. 1 at ¶ 19; Doc. 1-1 at 2-3.  The letter asked LKQ to "examine these patents together with the Kia replacement lamps that LKQ offers for sale on its website."  Doc. 1 at ¶ 19; Doc. 1-1 at 2.

On February 8, LKQ called Kia to ask about the potential for a licensing agreement for the patents.  Doc. 28 at 6.  The next day, Kia emailed LKQ to say it would not grant LKQ a license.  *Ibid*.  On April 8, LKQ's outside patent counsel, Irwin IP, emailed Kia that LKQ was

2

still reviewing Kia's letter and would provide a "substantive response" soon. *Id*. at 7; Doc. 31-3 at 2. Kia responded that it appreciated the update and asked to be kept posted. Doc. 31-3 at 2.

### B. LKQ's Communications with Hyundai

Hyundai Motor Corporation is a 33.88% shareholder of Kia Corporation. Doc. 28 at 6; Doc. 25 at ¶ 6. Both corporations are part of Hyundai Motor Group. Doc. 28 at 6; Doc. 25 at ¶ 6. And both share in-house and external intellectual property legal teams; design, development, manufacturing, and testing facilities; a parts and service arm; a design, technology, and engineering arm; suppliers; and marketing strategies. Doc. 46 at 3-5.

In May 2020, after LKQ learned that Hyundai had sued another automotive replacement part vendor, Irwin left a voicemail for Hyundai's outside counsel, Pillsbury Winthrop Shaw Pittman LLP, asking to discuss, among other things, the licensing of some of Hyundai's patents. Doc. 28 at 6. Pillsbury sent two emails in response: the first said that Pillsbury would respond shortly to Irwin's voicemail, and the second said that Hyundai was not interested in licensing its trademarks to LKQ. *Ibid*.; Doc. 30-1 at 3-5. Irwin responded, clarifying that LKQ's inquiry was not limited to trademarks and requesting a conversation. Doc. 28 at 6; Doc. 30-1 at 3. Pillsbury replied that it had "understood [Irwin's inquiry to be] a request for a broad based license," stated that Hyundai's decision not to offer LKQ a license was not limited to trademarks, and ignored Irwin's request for a conversation. Doc. 28 at 6; Doc. 30-1 at 2.

On February 4, 2021, Hyundai sent LKQ a letter suggesting that LKQ's replacement parts infringed on fifteen of Hyundai's design patents. Doc. 28 at 6; Doc. 25-1 at 2-3. On March 17, Irwin emailed Hyundai to say that it was LKQ's outside patent counsel and was reviewing Hyundai's letter. Doc. 28 at 6-7; Doc. 25-3 at 2. The next day, Hyundai's outside patent counsel, Mei & Mark LLP, emailed Irwin to ask that Irwin direct to it all future correspondence regarding Hyundai's patents. Doc. 28 at 7; Doc. 31-2 at 2.

On April 8, Irwin emailed Mei & Mark to say that it was still reviewing Hyundai's letter and would provide a "substantive response" soon. Doc. 28 at 7; Doc. 31-4 at 2. Mei & Mark responded that it appreciated the update, looked forward to Irwin's response, and was happy to answer any questions. Doc. 31-4 at 2.

### C.     Litigation

On June 11, LKQ sued Hyundai in this District, seeking a declaratory judgment of non-infringement or invalidity of the patents asserted in Hyundai's February 4 letter. Doc. 28 at 7; *see LKQ Corp. v. Hyundai Motor Am.*, No. 21 C 3167 (N.D. Ill.). The same day, LKQ brought this suit against Kia, seeking a declaratory judgment of non-infringement as to five of the patents asserted in Kia's January 20 letter, invalidity as to six of the patents, and both non-infringement and invalidity as to three of the patents. Doc. 28 at 7; Doc. 1 at ¶¶ 158-217.

Between June 11 and June 14, LKQ left a voicemail for Mei & Mark seeking to discuss the suits. Doc. 28 at 7; Doc. 30-2 at 8. Over the next several weeks, Irwin (on LKQ's behalf) and Mei & Mark (on Kia's and Hyundai's behalf) corresponded about potentially settling the suits. Doc. 28 at 7; Doc. 30-2 at 2-7. On July 2, Mei & Mark emailed Irwin to say that "Hyundai and Kia have decided that further settlement discussions would not be fruitful at this time." Doc. 28 at 7; Doc. 30-2 at 2.

### Discussion

Kia argues that it is not subject to personal jurisdiction in Illinois. A plaintiff "has the burden of proving personal jurisdiction." *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018). "[W]here, as here, there has been no [evidentiary] hearing on the matter," LKQ need make only "a prima facie showing of jurisdiction." *Ibid*.

Because LKQ's claims concern patent invalidity and non-infringement, Federal Circuit precedent governs whether Kia is subject to personal jurisdiction in Illinois. *See Silent Drive,*

*Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) ("Because the issue of personal jurisdiction in a declaratory action for patent invalidity and non-infringement is intimately related to patent law, personal jurisdiction … is governed by the law of this circuit.") (collecting cases). Under Federal Circuit precedent, "[a] district court has personal jurisdiction over the defendant in a patent infringement case if two things are true. First, jurisdiction must exist under the forum state's long-arm statute. Second, the assertion of personal jurisdiction must be consistent with the limitations of the due process clause." *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139 (Fed. Cir. 2008) (citations omitted). "[T]he Illinois long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) (internal quotation marks omitted). Accordingly, the question here is "whether the exercise of personal jurisdiction [over Kia in Illinois] would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

"There are two types of personal jurisdiction—general and specific." *Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). While general jurisdiction "requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts," specific jurisdiction "must be based on activities that arise out of or relate to the cause of action and can exist even if the defendant's contacts are isolated and sporadic." *Silent Drive*, 326 F.3d at 1200 (internal quotation marks and alterations omitted). LKQ pursues only a specific jurisdiction theory. Doc. 28 at 8. In evaluating whether a court in the forum state may exercise specific jurisdiction

over a nonresident defendant, "the Supreme Court 'has long focused on the nature and extent of the defendant's relationship to the forum State.'" *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1152-53 (Fed. Cir. 2021) (quoting *Ford*, 141 S. Ct. at 1024).

"For personal jurisdiction, the nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "For minimum contacts in the context of specific jurisdiction, the plaintiff must show that the defendant 'has purposefully directed his activities at residents of the forum, and [that] the litigation results from alleged injuries that arise out of or relate to those activities.'" *Ibid*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "If those minimum contacts are sufficient, the defendant may point to other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. Th[e] [Federal Circuit] has articulated those requirements in the form of a three-part test: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Ibid*. (internal quotation marks and citations omitted). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

Kia argues that sending a single cease-and-desist letter to LKQ in Illinois is insufficient to "demonstrat[e] that [it] has minimum contacts with the state of Illinois that relate to LKQ's declaratory judgment claims." Doc. 24 at 10-11. That argument is incorrect. The Federal

Circuit "has acknowledged that the defendant purposefully directs his activities at residents of the forum when the defendant sends a cease and desist letter to a potential plaintiff in that particular forum," and has held that "a subsequent declaratory judgment action by that potential plaintiff 'arises out of or relates to' the defendant's activity—namely, the cease and desist letter." *New World*, 859 F.3d at 1037 (quoting *Inamed*, 249 F.3d at 1360). Accordingly, under Federal Circuit precedent, Kia's sending a cease-and-desist letter to LKQ in Illinois satisfies the minimum contacts prong of the specific jurisdiction analysis. *See ibid*; *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed. Cir. 2017) ("In the context of declaratory judgment actions involving assertions of patent noninfringement or invalidity, we have concluded that … [m]inimum contacts may be established by the threat of an infringement suit, as communicated in a cease-and-desist letter.") (internal quotation marks omitted); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) ("[C]ease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts) … .").

However, exercising personal jurisdiction over Kia based solely on that letter and its related communications would not comport with "fair play and substantial justice." As the Federal Circuit has held, "even if [a] letter qualifie[s] as a minimum contact … merely sending notice letters of patent infringement does not satisfy the 'fair play and substantial justice' prong of the personal jurisdiction inquiry, because principles of fair play afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1139 (Fed. Cir. 2018) (internal quotation marks omitted); *see also New World*, 859 F.3d at 1037-38 ("Under the third part [fair play and substantial justice] of the [specific jurisdiction] test, … this court has held that

it is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more.") (collecting cases); *Red Wing*, 148 F.3d at 1360-61 ("[T]he 'minimum requirements inherent in the concept of "fair play and substantial justice" [] defeat the reasonableness of jurisdiction' [based on cease-and-desist letters alone]. Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.") (quoting *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.,* 480 U.S. 102, 121-22 (1987) (Stevens, J., concurring in judgment)).

All told, Kia sent LKQ one cease-and-desist letter, emailed LKQ to deny its request for a license, and thanked LKQ for its email saying that it was still reviewing Kia's letter. Doc. 1 at ¶ 19; Doc. 28 at 5-7; Doc. 31-3 at 2. Under Federal Circuit precedent, those contacts are insufficient to satisfy the "fair play and substantial justice" prong of the specific jurisdiction inquiry. In *New World*, the patentee sent three cease-and-desist letters to the alleged infringer; denied the alleged infringer's request for a license; and directed its exclusive licensee to contact the alleged infringer about disposing of the accused products. 859 F.3d at 1036. The Federal Circuit held that those contacts "[we]re not sufficient to satisfy the fairness part of the test for specific personal jurisdiction." *Id*. at 1043. Similarly, in *Red Wing*, the patentee sent three cease-and-desist letters to the alleged infringer, offered to negotiate a non-exclusive license, and granted the alleged infringer additional time to consider its letters. 148 F.3d at 1357. The Federal Circuit held that those contacts "cannot satisfy the [fairness] prong of the Due Process inquiry," as "[s]tandards of fairness demand that [the patentee] be insulated from personal

jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights." *Id*. at 1361; *see Trimble*, 997 F.3d at 1154-56 (reasoning that, while "Supreme Court cases [issued after] *Red Wing* have made clear that the analysis of personal jurisdiction cannot rest on special patent policies … *Red Wing* remains correctly decided with respect to the limited number of communications involved in that case").

The same result obtains here. Kia's single cease-and-desist letter, denial of LKQ's license request, and brief thank you note in response to LKQ's update comprise less substantial contacts with the forum state than those of the patentees in *New World* and *Red Wing*, both of which involved *three* cease-and-desist letters and ancillary communications. *See New World*, 859 F.3d at 1043; *Red Wing*, 148 F.3d at 1361. It necessarily follows that Kia's communications with LKQ, standing alone, are insufficient to support the exercise of personal jurisdiction over Kia in Illinois.

Pressing the contrary result, LKQ submits that the court "should attribute [Hyundai's] actions to [Kia] given the fact that Hyundai and Kia were related entities—Hyundai owns 33.88% of Kia—and were clearly acting as a single entity." Doc. 46 at 2-3. "Corporate separateness is an issue of regional-circuit law." *Celgene Corp. v. Mylan Pharms. Inc*., 17 F.4th 1111, 1125 (Fed. Cir. 2021). Under Seventh Circuit precedent, "where corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Exp. World Corp*., 230 F.3d 934, 943 (7th Cir. 2000) (explaining that "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over

the subsidiary").  Only in the "narrow instances where a parent utilizes its subsidiary in such a way that … the parent has greater control over the subsidiary than normally associated with common ownership and directorship or where the subsidiary is merely an empty shell" are the "contacts of a subsidiary [] aggregated with the contacts of the parent." *Purdue Research Found.*, 338 F.3d at 788 n.17 (internal quotation marks and alterations omitted).  That a "[p]arent[] of [a] wholly owned subsidiar[y] necessarily control[s], direct[s], and supervise[s] the subsidiar[y] to some extent" does not warrant aggregating the parent's and the subsidiary's contacts for personal jurisdiction purposes. *Ibid.*; *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) ("[J]urisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary.  Each defendant's contacts with the forum State must be assessed individually.") (citations omitted).

LKQ's allegations and evidence fall far short of showing that Hyundai "exercise[d] an unusually high degree of control over" Kia, or that the corporations failed to observe corporate formalities, such that Hyundai's contacts with LKQ in Illinois should be imputed to Kia.  True enough, Hyundai and Kia, as members of Hyundai Motor Group, share internal and external intellectual property legal teams that sent similar cease-and-desist letters to LKQ and coordinated the companies' responses to LKQ's suits.  Doc. 28 at 5-7; Doc. 46 at 3.  In addition, Hyundai and Kia share many resources, including common manufacturing, development, and marketing facilities and suppliers.  Doc. 46 at 4-5.  But the fact that Kia and Hyundai are related and share common resources in no way indicates that they fail to observe corporate formalities or that Hyundai exerts an "unusually high degree of control over" Kia. *Purdue Research Found.*, 338 F.3d at 778-79, 788 n.17 (holding that the contacts with the forum state of a wholly owned subsidiary that developed, manufactured, and sold pharmaceuticals based on its parent

corporation's patents could not be imputed to the parent, where the parent "control[led], direct[ed], and supervise[d]" the subsidiary "to some extent" but did not have an "unusually high degree of control" over it); *Reimer Exp.*, 230 F.3d at 945 (holding that, although the parent sent communications on behalf of its wholly owned subsidiary, the subsidiary's contacts could not be imputed to the parent because the companies "maintained separate books, records, financial statements, and tax returns, as well as observing all corporate formalities").  Indeed, in opposing Kia's motion to consolidate this suit with its suit against Hyundai, LKQ argued that Hyundai and Kia are "separate corporate entities," "do not have access to one another's documents," and "are not related companies in the typical sense" despite their "common ownership."  Doc. 21 at 2.

Hyundai's contacts therefore cannot be imputed to Kia for purposes of the personal jurisdiction analysis.  *See Purdue Research Found.*, 338 F.3d at 788 n.17; *Reimer Exp.*, 230 F.3d at 945.  But even if Hyundai's contacts were imputed to Kia, exercising personal jurisdiction over Kia, based solely on both corporations' contacts with LKQ in Illinois, still would not satisfy the fairness prong of the specific jurisdiction inquiry.  All told, Kia and Hyundai sent LKQ two cease-and-desist letters, twice denied LKQ's request for a license, and sent two emails thanking LKQ for its email updates.  Doc. 28 at 5-7.  Those contacts are still less extensive than the three cease-and-desist letters, refusal to grant a license, and request that the alleged infringer contact the patentee's exclusive licensee to dispose of the accused products in *New World*, which the Federal Circuit held were "not sufficient to satisfy the fairness part of the test for specific personal jurisdiction."  859 F.3d at 1043.

The one potential fly in the ointment is that Kia presents its arguments to this court under the wrong prong of the specific jurisdiction analysis—specifically, it contends that its communications with LKQ fail to satisfy the minimum contacts requirement, not that the court's

assertion of personal jurisdiction over it would not satisfy the "fair play and substantial justice" requirement. Doc. 24 at 10-15. Kia's mistake is understandable, as some Federal Circuit opinions blur the distinction between the minimum contacts analysis and the fairness analysis. *See Trimble*, 997 F.3d at 1156-57 (analyzing, under the minimum contacts prong, the extent of the patentee's twenty-two communications with the alleged infringer and the fairness of exercising personal jurisdiction over the patentee); *Xilinx*, 848 F.3d at 1354 (analyzing, under the minimum contacts prong, the extent of the patentee's contacts with the forum *after* concluding that the patentee's sending a cease-and-desist letter satisfied the minimum contacts requirement). Given the hazy border between the two principal prongs of the specific jurisdiction analysis in those opinions, Kia can be forgiven for mistakenly categorizing its argument under the minimum contacts prong rather than the "fair play and substantial justice" prong.

As noted, LKQ moves for jurisdictional discovery in the event this court finds that Kia's communications with LKQ in Illinois do not support the exercise of personal jurisdiction. Doc. 28 at 12-15. LKQ seeks discovery on four topics: patent-related communications from Kia and Hyundai to other entities in Illinois; whether either company has designated patent attorneys or agents in Illinois to prosecute patent applications; Kia's and Hyundai's contracts with their dealers; and Kia's and Hyundai's sales and litigation activity in Illinois. Doc. 39 at 14-19. "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Reimer Exp.*, 230 F.3d at 946.

As an initial matter, because there is no basis for imputing to Kia Hyundai's contacts with Illinois, LKQ is not entitled to discovery on those contacts. As to Kia's contacts with Illinois, LKQ acknowledges that its first three discovery topics relate solely to the minimum contacts prong of the specific jurisdiction analysis. Doc. 39 at 14-18 (seeking discovery "in connection

with the minimum contacts prong"). Because the court has already found that Kia's cease-and-desist letter satisfies the minimum contacts prong, LKQ has no need for discovery on those three topics.

As to LKQ's fourth discovery topic, under Federal Circuit precedent, Kia's sales in Illinois are irrelevant to specific jurisdiction. "[A] defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability. Thus, … such sales … will [not] support a claim of specific personal jurisdiction over a defendant patentee." *Avocent Huntsville Corp. v. Aten Int'l Co*., 552 F.3d 1324, 1336 (Fed. Cir. 2008); *see also Maxchief*, 909 F.3d at 1138 n.2 ("Shipments and sales of patented products by the patent holder are not enforcement activities, and thus do not qualify as relevant minimum contacts."). LKQ thus is not entitled to discovery on Kia's sales in Illinois.

However, Kia's prior litigation in Illinois *is* relevant to the fairness prong of the specific jurisdiction inquiry, as a defendant's prior litigation in the forum state can indicate that litigating in that forum would not be "unduly burdensome." *Xilinx*, 848 F.3d at 1357-58 ("The lack of significant burden on [the defendant] is also evidenced by [its] prior litigations in [the forum state] itself."); *see also Acorda Therapeutics Inc. v. Mylan Pharms. Inc*., 817 F.3d 755, 764 (Fed. Cir. 2016) ("The burden [of litigating in the forum state] on [the defendant] will be at most modest, as [the defendant] … has litigated many [] lawsuits in [the forum state], including some that it initiated."); *Viam Corp. v. Iowa Exp.-Imp. Trading Co*., 84 F.3d 424, 430 (Fed. Cir. 1996) (holding that exercising personal jurisdiction over the defendant in the forum state was fair because the defendant had initiated a different suit in that state, thus demonstrating that it "has

13

found a way to shoulder successfully the burden of litigating" there). Accordingly, LKQ is entitled to know the extent of Kia's prior litigation activity in Illinois. Although Kia's federal court litigation in Illinois is publicly available through the CM/ECF database, its state court litigation may not be publicly available, nor does Kia suggest as much. LKQ therefore is entitled to jurisdictional discovery on Kia's state court litigation in Illinois.

### Conclusion

LKQ's motion for jurisdictional discovery is granted in part and denied in part, and Kia's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is entered and continued. LKQ is entitled to seek discovery from Kia regarding its state court litigation in Illinois. Following discovery, the court will entertain supplemental briefing to address whether Kia's Illinois litigation affects analysis under the fairness prong of the specific jurisdiction inquiry.

April 12, 2022

_____
United States District Judge