**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LKQ CORPORATION, and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., | |
| Plaintiffs, | Civil Action No. 1:21-cv-03166 |
| v. | Jury Trial Demanded |
| KIA MOTORS AMERICA, INC. and KIA MOTORS CORPORATION, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPPOSED
<u>MOTION TO COMPEL KIA TO COMPLY WITH ITS ESI OBLIGATIONS</u>**

**Cases**

*Benanav v. Healthy Paws Pet Ins. LLC*, (W.D. Wash. Aug. 22, 2022)................................... 11, 12

*DR Distrib., LLC v. 21 Century Smoking, Inc.* (N.D. Ill. 2021) ......................................... 9, 11, 12

**Rules**

Fed. R. Civ. P. 26(f)(3)(C) ................................................................................................................ 3

I.      Introduction ................................................................................................................. 1

II.     Procedural Background ............................................................................................... 3

III.    Argument .................................................................................................................... 4

        A.      LKQ's Motion is Based on a Faulty Premise that Kia's Document
                Production is Complete and Deficient ............................................................ 4

                1.      LKQ Incorrectly Asserts that Kia "Cannot Locate"
                        Relevant Documents ........................................................................... 5

                2.      Kia's Collection of Additional Documents Related to
                        Consumer Clinics Demonstrates Kia's Diligence in
                        Collecting Documents in this Case ..................................................... 6

        B.      Entry of the Model ESI Order is Neither Necessary nor
                Appropriate at this Stage of the Litigation .................................................... 7

                1.      LKQ Never Proposed to Kia the Model Order it Presents in
                        its Motion ............................................................................................ 8

                2.      Entry of the Model Order Now Is Too Late to be Useful
                        and Would Significantly Prejudice Kia ............................................... 9

                3.      Kia has Already Complied with All Meaningful Provisions
                        of the Proposed Model Order ............................................................ 10

                4.      The Cases Cited by LKQ Do Not Compel Entry  of a New
                        ESI Protocol at this Stage of the Litigation ..................................... 10

                5.      Kia's Representations Dispel Any Concern Regarding
                        Kia's Document Collection Efforts ................................................... 12

        C.      Kia Produced its Documents as they are Kept in the Ordinary
                Course of Business ....................................................................................... 12

                1.      LKQ Falsely Accused Kia of Altering Metadata Without
                        Even Raising the Issue with Kia ....................................................... 13

                2.      Kia Did Not Alter the Metadata Associated with the
                        Documents Addressed by LKQ ......................................................... 14

IV.     Conclusion ................................................................................................................ 15

## I.      INTRODUCTION

Motions to compel typically involve a clear dispute over whether certain documents, known to exist, should be produced notwithstanding one party's objection to producing them. That is not the case here; LKQ is not moving to compel the production of documents that are the subject of a specific dispute. Instead, LKQ is moving to compel Kia to effectively reconduct its document collection and production under the guise of entry of a new ESI protocol. And it is seeking this extraordinary relief only because, according to LKQ, "***it appears*** that Kia's ESI production and search methods are deficient." Br. at 1 (emphasis added).

LKQ's motion has no merit. First, there is essentially no dispute for this Court to resolve. Kia conducted numerous reasonable, good-faith searches for documents, including for ESI, in response to LKQ's requests for documents. Kia's resulting document production therefore includes all relevant, responsive documents that Kia knows to exist. Second, LKQ's Motion unfairly and improperly seeks to retroactively impose discovery obligations on Kia that LKQ had an opportunity to propose at the outset of discovery but chose not to. Importantly, compelling a new ESI agreement at this stage of the litigation would significantly prejudice Kia with an enormous burden of potentially redoing discovery from square one. Third, Kia has already produced its documents as they are kept in the ordinary course of business, complete with the original metadata. With Kia's document production substantially complete, compelling Kia to potentially re-collect and re-produce all of its documents is neither necessary nor appropriate.

Absent a legitimate basis to seek the extraordinary relief it requests, LKQ's Motion repeatedly and unwarrantedly casts Kia, and its efforts to comply with its discovery obligations, in a bad light. LKQ's disparaging allegations should be disregarded, particularly after considering Kia's efforts to not only comply with its discovery obligations, but to address

1

virtually every issue LKQ has raised regarding Kia's discovery responses.[1] Indeed, Kia has spent months diligently meeting and conferring with LKQ regarding its concerns and seeking to resolve them in good faith. As part of those efforts, Kia has gone to extraordinary lengths to cooperate with LKQ's nearly daily demands, and has: (i) responded to 19 interrogatories with more than 60 discreet subparts (*see* Burns Decl. ¶ 6); (ii) responded to 156 requests for production (*see* Burns Decl. ¶ 6); (iii) responded to 1,719 requests for admission (*see* Burns Decl. ¶ 6); (iv) supplemented its first interrogatory responses five times, on April 8, 2022, May 20, 2022, August 20, 2022, August 24, 2022, and September 30, 2022 (*see* Burns Decl. ¶ 7, Ex. D); and (vi) supplemented its second interrogatory responses three times, on September 19, 2022, September 30, 2022, and October 21, 2022 (*see* Burns Decl. ¶ 8, Ex. E).[2] In addition, as it prepared this Opposition, Kia was also preparing to respond to 3 more interrogatories with 15 discreet subparts and 8 more requests for production. *See* Burns Decl. ¶ 9, Ex. F.

    As is clear from the above summary and additional details provided herein, Kia has not only complied with its discovery obligations but has gone above and beyond to respond to

---

[1] Counsel for LKQ has sent dozens of emails regarding perceived deficiencies in Kia's discovery responses. On one day alone, Counsel for LKQ sent six such emails. *See* Burns Decl. ¶ 4, Ex. A.

[2] Kia expects LKQ to claim in its Reply that all of the correspondence, conferences, and supplements were necessary because Kia's discovery responses were deficient. While Kia did supplement its responses to provide certain necessary substantive additions, in some cases, LKQ demanded Kia supplement its response simply to correct typos. *See* Burns Decl. ¶ 4, Ex. A at 1 and ¶ 5, Ex. B. Other emails from LKQ were less about actual deficiencies but rather sought explanation for Kia's responses that LKQ simply could not understand to be true. *See* Burns Decl. ¶ 4, Ex. A at pg. 5 of 23 and pg. 15 of 23. This second category of emails is important because it shows that LKQ has a predetermined view of what documents and information Kia should be providing. When Kia's production of documents and information fails to match LKQ's expectations, LKQ erroneously concludes that Kia has failed to collect and produce correct or complete information. In each of these instances, Kia was forced to explain why LKQ's understanding was incorrect and supplemented its responses to explain the underlying facts in a manner sufficient to satisfy LKQ and avoid unnecessary motions practice.

LKQ's numerous discovery requests and perceived deficiencies. And it has done so without a formal ESI protocol. Entering one now is unnecessary and would significantly prejudice Kia—particularly because it is not likely to uncover any additional relevant, responsive documents. For these reasons, explained in more detail below, the Court should deny LKQ's Motion.

## II.    PROCEDURAL BACKGROUND

LKQ filed this case on June 11, 2021, seeking a declaratory judgment that 14 Kia design patents are invalid and/or non-infringed. *See* Dkt. No. 1 (Compl.). A design patent is a type of patent that covers the ornamental appearance of a device rather than its function. The patents-at-issue are directed to the ornamental appearance of certain Kia headlamps and taillamps. The parties held a Rule 26(f) conference on July 23, 2021, to discuss, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3)(C); *see also* Burns Decl. ¶ 10, Ex. G (July 22, 2021, Email from LKQ counsel scheduling a Rule 26(f) conference for July 23, 2021). On August 5, 2021, the parties filed a joint initial status report that did not propose a formal ESI protocol and indicated that the parties did not anticipate any electronic discovery disputes. Dkt. No. 21 at 5. On November 18, 2021, LKQ served its first set of discovery requests, including requests for production of documents and things, interrogatories, and requests for admission. *See* Burns Decl. ¶ 11, Ex. H. Since then, LKQ has served multiple additional discovery requests, totaling 22 interrogatories with approximately 75 discreet subparts, 156 requests for production of documents and things, and 1,719 requests for admission. *See* Burns Decl. ¶ 6, 9. In response, Kia has done extensive searching, including of electronic documents, and produced more 43,000 documents, including documents in native electronic form with metadata. *See* Burns Decl. ¶ 12. On October 5, 2022, nearly a year and a half after the parties conducted their Rule 26(f) conference, LKQ's counsel for the first time requested that the parties

3

"enter into a formal ESI agreement, rather than our current informal agreement to conduct ESI searching." Burns Decl. ¶ 13, Ex. I. Fact discovery ends September 28, 2023. *See* Dkt. No. 98.

## III.   ARGUMENT

### A.   LKQ's Motion is Based on a Faulty Premise that Kia's Document Production is Complete and Deficient

Throughout its Motion LKQ misrepresents the status of Kia's document production as "complete." *See* Br. at 2, 3, 4, & 5. LKQ even goes so far as to state "Kia has *repeatedly and falsely asserted* that its production was complete." Br. at 6 (emphasis added). But Kia has never claimed its document production is "complete." Rather, Kia has consistently represented to LKQ, and this Court, that its document production is "substantially complete," and even corrected LKQ on this very point recently. *See* Bregenzer Decl. ¶ 6, Ex. C at 2; Burns Decl. ¶ 14, Ex. J at 2; Dkt. No. 116 at 1.

While LKQ mispresents this distinction in its Motion, the Court cannot overlook it. Kia has stated that its production is substantially complete because Kia is continuing to work with LKQ to identify, search for, and produce documents that LKQ has a specific basis to believe exist. In fact, as recently as November 3, 2022, LKQ identified two specific documents that are referenced in other Kia documents but that LKQ could not locate in Kia's production. *See* Burns Decl. ¶ 15, Ex. K at 2. In response, Kia located one of the documents in its production and searched for and produced the other document soon after. *See id.* at 1. Kia does not believe this other document is relevant to this litigation, let alone any of LKQ's discovery requests, but nonetheless searched for and produced it to appease LKQ on issues that are too trivial to merit consideration,

Any additional documents that Kia locates in direct response to a request from LKQ represents a very small fraction of a percentage of Kia's total document production. Kia's

4

compliance with its continuing discovery obligations by searching for and potentially locating a small number of additional documents should not be misconstrued as Kia failing to comply with its discovery obligations in the first instance.

### 1.    LKQ Incorrectly Asserts that Kia "Cannot Locate" Relevant Documents

To support its argument that Kia's production is deficient, LKQ erroneously argues that Kia "cannot locate" inventor documents that were the subject of this Court's Order No. 88. Br. at 2-3. But as it did with the status of Kia's document production, LKQ manufactures a non-existent dispute to seek to impose an untimely and unnecessary new ESI protocol.

The discovery record demonstrates that, after conducting a reasonable search for relevant, responsive documents, eight of the twenty-one inventors for the Asserted Patents determined they had no responsive documents. It is not surprising that some of the inventors do not have responsive documents as the designs at issue were developed between approximately six and fourteen years ago. *See* Burns Decl. ¶ 16, Ex. L, Ex. M. In response to correspondence from LKQ, Kia informed LKQ that the inventors from whom Kia did not collect and produce documents "conducted reasonable searches for documents and located no responsive documents." Burns Decl. ¶ 17, Ex. N at 2. Kia also supplemented its response to Interrogatory No. 11 to confirm that certain of the inventors-in-suit located no relevant, responsive documents after conducting a reasonable search. *See* Burns Decl. ¶ 18, Ex. O at 9. Nonetheless, LKQ's motion erroneously claims that the absence of these documents from Kia's production is a "deficienc[y] that Kia is unwilling to explain . . . ." Br. at 3.

Most importantly, Kia's efforts to search for and collect documents from the inventors was reasonable. Kia did not, as LKQ argues, "merely instruct[] its inventors to search for documents" or "put[] the burden on each inventor to search his or her own files for responsive

████████████████████████

documents."  Br. at 3 & n.2. These statements are LKQ's counsel's self-serving characterizations of Kia's document collection efforts, and are supported only by statements made by LKQ's counsel in emails sent to Kia's counsel.  *See* Bregenzer Decl. ¶ 9, Ex. F.  Importantly, Kia expressly disagreed with LKQ's mischaracterization of Kia's ESI searching, and provided in response an accurate statement about Kia's ESI collection efforts.  *See id.* (Kia's response imbedded in red).  Working with counsel, Kia conducted reasonable searches for documents, including working with the named inventors to conduct searches of their personal computers. Kia also searched for and collected computer-aided design ("CAD") drawings for the Kia lamps at-issue ████████████████████████. Bregenzer Decl. Ex. G at 9.  In short, Kia's search for R&D documents through the named inventors and Kia's ████ ████ was reasonable.  That Kia did not locate documents from eight named inventors does not lead to a conclusion that documents are "missing" or that Kia's document collection efforts were deficient.

> **2.    Kia's Collection of Additional Documents**
> **Related to Consumer Clinics Demonstrates Kia's**
> **Diligence in Collecting Documents in this Case**

LKQ's Motion erroneously argues that Kia locating additional consumer clinic documents during discovery in this case demonstrates that Kia's general document collection procedures are deficient.  Br. at 4-6.  LKQ's argument is counterintuitive and should be disregarded.

As Kia explained during the ITC proceeding, Kia located additional clinic documents in October 2022, which Kia immediately produced to LKQ.[3]  *See* Burns Decl. ¶ 19, Ex. P at 4.  In

---

[3] In a letter to the counsel for Respondents in the ITC investigation, Kia addressed the circumstances of how the additional clinic documents were located during discovery in this case but not during discovery in the ITC Investigation.  *See* Ex. K to Bregenzer Decl.  Apparently

the ITC proceeding, the parties filed a joint motion and stipulation to address those new documents in lieu of reopening discovery, and the administrative law judge has not made any finding that Kia neglected its discovery obligations in any way. *See* Burns Decl. ¶ 19, Ex. P. If anything, Kia locating these additional clinic documents and immediate production of those documents confirms that Kia takes its discovery obligations seriously, that Kia's document collection efforts in this case have been comprehensive, and that there is no reason to compel the re-collection of documents under a new ESI agreement.

LKQ's argument that Kia did not locate these documents until October or supplement its discovery responses to identify the additional clinics is irrelevant. Kia has now located and produced all documents that it knows to exist regarding consumer clinics. And Kia supplemented its response to Interrogatory No. 2 on November 23, 2022. *See* Burns Decl. ¶ 20, Ex. Q at 18-19. Thus, LKQ's argument is moot and fails to support LKQ's request for entry of a new ESI protocol.

**B. Entry of the Model ESI Order is Neither Necessary nor Appropriate at this Stage of the Litigation**

Despite having nearly a year and half to raise the issue with both Kia and the Court, LKQ only recently (in October 2022) asked for a brand new ESI agreement. *See* Burns Decl. ¶ 13, Ex. I. The parties held their joint Rule 26(f) conference in this case nearly one and a half years ago (on July 22, 2021) (*see* Burns Decl. ¶ 10, Ex. G), and in that time, Kia has responded to 156 document requests, conducted extensive electronic searches, and produced over 33,000 documents, including native documents and metadata. *See* Burns Decl. ¶ 6, 12. The parties also

---

unsatisfied with Kia's explanation, LKQ poses a series of questions that Kia does not believe LKQ ever raised in the context of discovery in this case. Br. at 6. As it has consistently done with LKQ's numerous other requests, Kia remains willing to discuss all manners of discovery with LKQ, including the additional question that LKQ contends "Kia refuses to answer." *Id.*

submitted two Joint Initial Status Reports, one on August 5, 2021, and one on August 12, 2022, both of which stated that the parties did not anticipate any electronic discovery disputes. Dkt. No. 21 at 5; Dkt. No. 97 at 5.

It wasn't until October 5, 2022, nearly a year and half after the Rule 26(f) conference, that counsel for LKQ reached out to counsel for Kia and proposed, for the very first time, that the parties consider entering a new ESI agreement rather than the informal ESI agreement under which the parties have been proceeding since the Rule 26(f) conference. Burns Decl. ¶ 13, Ex. I (October 5, 2022, email from LKQ's counsel stating, "[s]eems like we should enter into a formal ESI agreement, rather than our current informal agreement to conduct ESI searching.").

Based on the discovery procedures agreed to by the parties during the Rule 26(f) conference, Kia has collected and produced all sorts of ESI, from emails to system screenshots, to native computer files such as Word files, Excel files, and PDFs to name only a few. Thus, reconducting Kia's document collection and production efforts under a new ESI agreement is neither necessary nor appropriate considering that Kia has already collected and produced all relevant, responsive ESI that Kia knows to exist.

### 1. LKQ Never Proposed to Kia the Model Order it Presents in its Motion

When Kia originally suggested that the parties enter a new, formal ESI agreement on October 5, 2022, it was not the Model Order attached to LKQ's Motion but rather the Northern District of Illinois Local Patent Rules for Electronically Stored Information. *See* Burns Decl. ¶ 13, Ex. I. In fact, LKQ never raised the Model Order with Kia before filing its Motion. *See* Burns Decl. ¶ 21. LKQ's Motion leaves out this fact. By failing to even suggest the Model Order to Kia, LKQ disregarded the Court's recent directive to the parties to try and work out all discovery disputes, including this very issue, without needlessly involving the Court. *See* Dkt.

8

No. 129 ("The parties are urged to resolve their disputes, identified in the report, without judicial intervention.").  And while Kia maintains that neither ESI protocol is necessary or appropriate, this plainly demonstrates how LKQ's Motion fails to accurately reflect what the parties did and did not discuss.

## 2. Entry of the Model Order Now Is Too Late to be Useful and Would Significantly Prejudice Kia

In paragraph 5 of the Model Order, it specifically contemplates that the parties will meet and confer about methods to search ESI when responding to an initial Rule 34 request.  Ex. B to Bregenzer Decl. at 3.  In this case, the parties held their Rule 26(f) conference almost a year and a half ago.  LKQ served its first request for documents under Rule 34 on November 18, 2021, more than one year ago.  *See* Burns Decl. ¶ 11, Ex. H.  Kia responded to those requests on January 21, 2022.  *See* Burns Decl. ¶ 22, Ex. R.  As Kia has argued elsewhere in this Opposition, to the extent LKQ wanted to enter into a different ESI protocol with keyword searching, it should have approached Kia about it at the beginning of discovery, or, at the very least, around the time Kia responded to LKQ's first requests for production, as specifically contemplated by the proposed Model Order.  *See also DR Distrib., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 925 (N.D. Ill. 2021) (Explaining that "[t]he practical purpose of [the 2006 amendment to Rule 26(f)] was to facilitate early identification of electronic discovery issues to prevent expensive and time-consuming discovery disputes.")  LKQ failed to do so, and Kia proceeded to collect and produce its documents under the discovery procedures agreed to by the parties during the Rule 26(f) conference.  Entering the Model Order now would, therefore, fail to serve its intended purpose and would significantly prejudice Kia.

### 3. Kia has Already Complied with All Meaningful Provisions of the Proposed Model Order

Although Kia maintains entering the Model Order now would be inappropriate, it has nonetheless already complied with all meaningful portions of the proposed Model Order. For example, as demonstrated through its multiple email correspondences, telephone conferences, and supplemental responses, Kia has cooperated on virtually every aspect of discovery, including addressing multiple issues raised to LKQ. Kia has also preserved all relevant ESI and produced its documents with electronic metadata. The only portion of the proposed Model Order that LKQ contends it not currently being performed by the parties is keyword searching.

Keyword searching, however, is unnecessary in this case. Generally speaking, keyword searching is necessary when there are too many documents to collect and review for relevance and responsiveness in a meaningful and efficient way. In those situations, keyword searching acts as a proxy for the process of gathering all documents and reviewing them before producing only those that are relevant and responsive to a request. It also helps to narrow the documents gathered in response to a request. But, where all relevant, responsive documents have been collected, keyword searching is both unnecessary and unhelpful. That is the case here. Kia has already conducted numerous reasonable searches for documents in all places that Kia knows relevant and responsive documents to exist. Accordingly, entry of a new ESI protocol and compelling Kia to re-collect documents under that protocol is both unnecessary and improper.

### 4. The Cases Cited by LKQ Do Not Compel Entry of a New ESI Protocol at this Stage of the Litigation

LKQ relies on two decisions to support its argument that entry of a new ESI protocol is required. Both cases are distinguishable and neither compels the Court to enter a new ESI agreement here, particularly given LKQ's inexcusable delay in seeking its entry.

10

First, LKQ relies on *DR Distributors*, 513 F. Supp. 3d at 934–38 (N.D. Ill. 2021) (*see* Br. at 7-8) to support its argument that self-collection by custodians, without more, does not satisfy a party's discovery obligations. LKQ focuses on four alleged "pitfalls" that the Court identified as potentially affecting the sufficiency of a party's collection of ESI. *Id.* Despite touting the significance of these factors, LKQ argues only that "*it appears* that each pitfall *may be present* in this case." Br. at 8 (emphasis added). In its brief, however, LKQ only substantively addresses one of the pitfalls—the alleged failure to identify all sources of information. *Id.* But, as explained above, Kia did not fail to identify any sources of information in this case. Indeed, the opposite is true. The consumer clinic information LKQ is referring to was specifically located during ESI collection for this case, and those documents have been produced. *See* Section III.A.2, *supra*.

As to the other pitfalls allegedly present, LKQ fails to show how they are relevant to or present in this case. Instead, LKQ merely suggests the fact that several of the inventors in suit no longer have relevant documents "could be indicative of any of the remaining three factors." Br. at 8. This unsupported allegation fails to demonstrate that any of the remaining pitfalls affected ESI collection in this case. Indeed, LKQ presents no evidence or suggestion of spoliation, nor that Kia located relevant, responsive documents but failed to provide them to counsel. Finally, the need for the inventors to fully document their searches in this case is not necessary because each inventor collected and provided to counsel all documents regarding the relevant R&D, without specific search limitations.

Second, LKQ's reliance on *Benanav v. Healthy Paws Pet Ins. LLC*, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022) (see Br. at 8) is misplaced because the case primarily deals with parties' obligations to meet and confer regarding ESI search terms under a formal ESI

agreement that required keyword searching, which the parties do not have in this case. 2022 WL 3587982, at *1 ("The Court entered a Stipulation and Order Regarding Discovery of Electronically Stored Information ("ESI Protocol") on January 6, 2022."). Nevertheless, the court in *Benanav* also addressed the four *DR Distributor* factors. As shown above, those factors do not compel entry of the Model ESI Order at this stage of the case.

### 5. Kia's Representations Dispel Any Concern Regarding Kia's Document Collection Efforts

LKQ argues that Kia should be compelled to provide further explanation of its document collection efforts. Br. at 9. LKQ's argument is based, in part, on Kia's alleged "refus[al] to even come to the table to disclose its methods." *Id.* But Kia has not refused to provide LKQ with information about its document collection efforts. To the contrary, Kia provided a detailed response to an LKQ interrogatory describing how Kia's documents were collected and stored. *See* Burns Decl. ¶ 18, Ex. O. Notably, LKQ has not argued that Kia's response to Interrogatory No. 11 is deficient or moved to compel additional information in response to Interrogatory No. 11 since LKQ's most recent supplement. In short, Kia has provided sufficient explanation to demonstrate that Kia has conducted reasonable searches for documents and produced all relevant, responsive documents that Kia knows to exist.

### C. Kia Produced its Documents as they are Kept in the Ordinary Course of Business

Notwithstanding LKQ's arguments to the contrary, and as Kia previously informed counsel for LKQ, Kia has produced its documents as they are kept in the ordinary course of business. Burns Decl. at ¶ 23, Ex. S at pg. 1, ¶ 4. Based on this fact alone, the Court should deny as moot LKQ's request for an order compelling Kia to re-produce its documents as they are kept in the ordinary course of business. LKQ incorrectly argues that Kia did not produce its documents as they are kept in the ordinary course of business because there are six instances of

12

supposed irregular metadata, drawn from more than 33,000 total documents that Kia produced.
As demonstrated below, to conclude that these supposed irregularities warrant the reproduction
of Kia's document production is contrary to the evidence that Kia collected and produced its
documents as they are kept in the ordinary course of business.

1.      <strong>LKQ Falsely Accused Kia of Altering<br>Metadata Without Even Raising the Issue with Kia</strong>

In yet another instance of bringing issues to the Court without first raising them with Kia,
LKQ argues that six documents with supposedly irregular metadata are evidence that Kia "has
tampered with its metadata." Br. at 11. Not only are LKQ's allegations unfounded and false, but
a closer look demonstrates that LKQ's metadata concerns simply stem from LKQ's erroneous
understanding of how to read metadata.

Before addressing the substance of LKQ's unsupported allegations, however, it is
important to note that LKQ never raised any alleged metadata issues with Kia before filing its
Motion. LKQ's statement in its brief that LKQ raised these metadata issues on the November 8,
2022, meet and confer (br. at 10-11) is, unfortunately, incorrect.[4] The ESI discussion on the
November 8, 2022, meet and confer was limited only to whether Kia was maintaining its
objection to entry of a formal ESI agreement. *See* Burns Decl. ¶ 24. As a result, Kia learned of
these alleged metadata issues for the first time when LKQ filed its Motion. *Id.*

For this reason alone, the Court should decline to even hear this issue. Notably, the
parties previously were able to resolve production related issues without needlessly involving the
Court. By failing to even raise these metadata issues before ambushing Kia in its Motion, LKQ

---

[4] Notably, the Declaration of Michael P. Bregenzer does not contain a sworn statement
that LKQ raised these metadata issues with Kia in advance of this Motion. Instead, it merely
points to an email sent after that call that refers to unspecified "metadata issues associated with
Kia's document production." Bregenzer Decl. ¶ 16, Ex. L.

████████████████████████

failed to comply with its meet-and-confer obligations in the local rules and ignored the Court's

recent directive to the parties to try and work out all discovery disputes without needlessly

involving the Court. *See* Dkt. No. 129.

### 2. Kia Did Not Alter the Metadata Associated with the Documents Addressed by LKQ

If the Court considers the metadata issues raised by LKQ, the evidence demonstrates Kia

did not alter any metadata associated with any documents it produced, including the six

documents at issue in LKQ's motion. The issues raised by LKQ are largely based on LKQ's

misunderstanding of metadata and could have been easily resolved if LKQ's counsel had simply

asked Kia's counsel about that metadata instead of needlessly filing a motion with the Court.

First, for four of the documents, LKQ asserts that the "Company" field includes entries

such as █████████████████████████████ Br. at 11-12

(referring to KIA_NDIL 062549-597, KIA_NDIL 059845-858, KIA_NDIL 075397-429, and

KIA_NDIL 075553-591). Kia, however, produced native versions of those Microsoft Word and

PowerPoint documents to LKQ, and the document information contained in those native versions

confirms that this is the metadata in the "Company" field that exists in the original native

documents. Burns Decl. ¶ 25. These metadata entries in the Company field for those four

documents certainly does not support LKQ's allegation that "Kia has tampered with its

metadata." Br. at 11. In fact, LKQ presents no actual evidence that Kia did anything other than

collect and produce documents that contained metadata that LKQ finds "strange." Br. at 11 n.7.

Second, LKQ cites to two documents that LKQ erroneously contends are "tagged with an

incorrect date," and have missing dates, authors, and custodians. Br. at 12-13. But LKQ's

contention appears to be premised on its own inability to correctly read the metadata for those

documents—a problem which could have been easily resolved if LKQ's counsel had simply

14

asked Kia's counsel about those documents rather than unnecessarily filing a motion to compel without meeting and conferring on those issues. The two documents referred to by LKQ are .jpg image files. Kia produced those two .jpg image files in native format including all available metadata fields. Notably, those files do not contain date created and date modified metadata. *See* Burns Decl. ¶ 26. LKQ's incorrect created and modified dates for those files in its brief (at 12-13) appears simply to be based on LKQ's incorrect reading of the metadata in the native .jpg files that Kia produced.

Importantly, recollecting and reproducing Kia's documents under the ESI protocol that LKQ seeks will not capture metadata that does not exist in the original documents. Kia collected and produced all of its documents as they are kept in the ordinary course. The documents contain the metadata that existed in those native files and was never altered by Kia. LKQ's displeasure with the absence of certain metadata in Kia's documents connect be cured by compelling Kia to recollect and reproduce the same documents.

## IV. CONCLUSION

Discovery in this case has proceeded for more than a year under the informal ESI protocol has been in place since the initial Rule 26(f) conference. Based on that, Kia has already collected and produced virtually every document that it will produce in this case, and LKQ has failed to show that Kia's document collection efforts were inadequate. To the contrary, Kia appropriately collected its documents under the informal ESI agreement and has produced those documents at they were kept in the ordinary course of business. Entering a new ESI order at this stage of the litigation would significantly prejudice Kia and LKQ has failed to demonstrate such extraordinary relief is necessary or appropriate. For these reasons, the Court should deny LKQ's Motion.

15

Dated: December 8, 2022

/s/ *Thomas R. Burns, Jr.*

Paul Bartkowski
Thomas R. Burns, Jr.
Emi Ito Ortiz
Bartkowski PLLC
6803 Whittier Ave. Suite 200A
McLean, Virginia 22101
(571) 533-3581
pbartkowski@bartkowskipllc.com
tburns@bartkowskipllc.com
eortiz@bartkowskipllc.com

Edward J. Naidich
K. Kevin Mun
Guang-Yu Zhu
MEI & MARK LLP
818 18th St. N.W., Suite 410
Washington, D.C. 20006
(888) 860-5678
enaidich@meimark.com
kmun@meimark.com
gzhu@meimark.com

Anne Shaw
SHAW LEGAL SERVICES LTD.
540 W. Briar Pl., Ste. B
Chicago, Il 60657
(773) 453-4861

***Attorneys for Defendants***
***Kia America, Inc. and***
***Kia Corporation***

**<u>CERTIFICATE OF SERVICE</u>**


       I, Anne I. Shaw, being first duly sworn, depose and state that I served the *Defendants' Opposition to Plaintiffs' Opposed Motion to Compel KIA to Comply With its ESI Obligations* on the parties to whom it is directed, by the CM/ECF filing system on December 8, 2022.


<u>/s/ Anne I. Shaw</u>