IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LKQ CORPORATION, and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KIA MOTORS AMERICA, INC. and KIA MOTORS CORPORATION, <br><br> Defendants. | Case No. 21 C 3166 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORNDUM OPINION AND ORDER**

Before the Court is Plaintiff LKQ's Motion to Compel Production of Allegedly Privileged Documents [186]. For the following reasons, LKQ's motion is granted in part and denied in part.

**ANALYSIS**

In this patent infringement litigation over automotive parts, LKQ moves to compel Kia to produce various privilege log entries. *See generally* Doc. 186. Alternatively, LKQ asks the Court to order Kia to tender the documents to the Court for *in camera* review to evaluate Kia's privilege assertions. *Id*. at 2. LKQ asserts that Kia's documents relating to informational requests, third-party SL corporation, and non-attorney memoranda and discussions are not privileged and should be produced. *Id.* at 2-7 (*citing* Entry Nos. 64-66, 69-70, 78-79, 81-82, 84-85). LKQ also contends that certain privilege log entries are insufficient to determine whether privilege attaches, and as a result, Kia has waived the privileges they asserted. *Id.* at 7-12 (*citing* Entry Nos. 7-8, 80, 86-88).[1]

Kia responds that the documents at issue reflected in its most recent privilege log [206-4][2] are protected communications because they request information to provide a legal opinion in anticipation of litigation and are protected by the attorney-client privilege, work product doctrine, or common interest doctrine. Doc. 206 at 2-9 (*citing* Entry Nos. 64-66, 69-70, 81-82, 84-85). Kia also contends that Federal Circuit privilege law applies to patent applications and prosecution-related documents. *Id*. at 9-14 (*citing* Entry Nos. 7-8, 78-80, 86-88). Kia further contends that an

---

[1] LKQ's opening brief also requested the production of entry Nos. 7-37, 43-51, 53-66, 80, and 86-88, and LKQ's reply brief requested entry No. 83. *See* Doc. 186 at 9; Doc. 229 at 3. Because LKQ did not substantively discuss these entries in its briefs, the Court limits its review to entries that are more than merely referenced.

[2] The Court will reference the descriptions provided in the most recent privilege log on March 24, 2023, which contains corrections to Kia's supplemental privilege log served on March 10, 2023. *See* Doc. 206-4.

*in camera* review is not justified and requests reasonable fees under Federal Rule of Civil Procedure 37(a)(5)(B). *Id*. at 14-15. The Court addresses each issue in turn below.

## I. Choice of Law

As an initial matter, the Court must address whether Federal Circuit law or Seventh Circuit law governs. In patent cases, the Court applies "Seventh Circuit law for questions of attorney-client privilege and waiver of attorney-client privilege that do not implicate substantive patent law, and Federal Circuit law to the extent these issues do implicate substantive patent law." *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, 2020 WL 1148813, at *5 n.5 (N.D. Ill. Mar. 9, 2020) (cleaned up). Although the privilege log entries at issue refer to patents, the Court finds that the disputes do not implicate substantive patent law. *See Hill-Rom Servs., Inc. v. Tellisense Med., LLC*, 2019 WL 10888530, at *2 (S.D. Ind. May 13, 2019) (the fundamental principles of attorney-client privilege are "not intimately involved in the substance of enforcement of the patent right") (cleaned up); *see also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1346 (Fed. Cir. 2005) (applying Seventh Circuit law to questions about waiver of the attorney-client privilege involving documents relating to legal opinions about patent validity and invention disclosure statements). Rather, the dispute here centers on whether certain documents are more business-oriented documents rather than documents concerning legal advice. Thus, the Court applies Seventh Circuit law to the privilege issues raised in LKQ's motion.

## II. Documents LKQ Claims Should be Produced

The present dispute concerns Kia's privilege log entries, where Kia has withheld some of its communications from production on the ground that they are protected under the attorney-client privilege, work product doctrine, and common interest doctrine. Pursuant to the Federal Rules of Civil Procedure, the party asserting the attorney-client privilege must "expressly make the claim; and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii). The Seventh Circuit has summarized the general principles governing the attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). "A party seeking to invoke the attorney-client privilege in order to avoid producing otherwise discoverable information has the burden of establishing all of its essential elements." *Carlson v. Northrop Grumman Corp.*, 290 F. Supp. 3d 867, 871 (N.D. Ill. Feb. 5, 2018) (*citing United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003)).

The attorney work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

representative." Fed. R. Civ. P. 26(b)(3)(A). The work-product doctrine is intended "to protect an attorney's thought process and mental impressions against disclosure," as well as to "limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). Like the attorney-client privilege, "[t]he party asserting the work product doctrine bears the burden of establishing that the doctrine applies to each document as to which it is asserted." *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 163 (N.D. Ill. 2017).

### A. Requests for Legal Advice

To start, LKQ contends that several of Kia's privilege log entries are simply requests for information, which cannot be privileged and should be produced. Doc. 186 at 2-3 (*citing* Entry Nos. 81-82, 84-85). The Court disagrees. Communications between attorneys and clients to provide information and investigate claims are privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *see also Sandra T.E.*, 600 F.3d at 619–620 (The attorney-client privilege protects communications made in the course of an attorney's factual investigation when that investigation occurs to provide legal advice). Specific to patent disputes, "communications between attorney and client for the purpose of securing legal advice concerning preparation or prosecution of a patent application are protected, whether the attorney is employed as outside counsel, house counsel, or as member of the Patent Department." *Amsted Indus., Inc. v. Nat'l Castings, Inc.*, 1990 WL 103286, at *1 (N.D. Ill. July 13, 1990).

Kia described its privilege log entries as confidential email communication[s] or confidential email communication forwarding confidential communication between attorney and client requesting information to formulate or provide legal opinion of counsel in anticipation of potential design patent litigation relating to automotive lamps. Doc. 206-4 at 16-17.[3] These entries reflect legal advice sought in confidence by the client (inventors and engineers at Kia). Notably, the entries describe requests for information to allow an in-house attorney at Kia to formulate or provide legal opinions related to potential design patent litigation. *Evans*, 113 F.3d at 1461.[4] As such, these communications may reveal the substance of a client's confidence and reflect on the attorney's legal advice and strategy. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) ("[S]tatements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, or where those

---

[3] Unlike in *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 2021 WL 4745385 (N.D. Ill. Oct. 12, 2021), Kia's privilege log, which heavily uses privilege buzzwords, also includes "descriptive information about the document's subject matter." *Id.* at *4. Specifically, the subject at issue in the communications is "potential design patent litigation relating to automotive lamps." Doc. 206-4 at 16-17.

[4] LKQ relies on *Canal Barge Co. v. Commonwealth Edison Co.*, 2001 WL 968727 (N.D. Ill. Aug. 24, 2001), to claim that "requests" for legal advice are insufficient to assert privilege. However, in *Canal Barge Co.*, the court explained that deposition questions that did not elicit privileged information, and only "request[ed] a factual statement" were an insufficient ground to object on privilege. *Id.* at *3. On the contrary, Kia's descriptions of its email communications here demonstrate that they were intended to solicit or provide a legal opinion and elicit privileged information.

communications would reveal the substance of a confidential communication by the client[.]") (internal citations omitted).

Moreover, three of the entries are dated October 2020, *see* (Entry Nos. 81, 82, 84), and one is dated April 2021, *see* (Entry No. 85). These dates are in proximity to when Kia sent a notice letter to LKQ in January 2021, and Kia filed a design patent infringement lawsuit against LKQ's supplier of the accused infringing products in May 2021. As a result, these communications occurred when Kia would have been investigating its legal claims and formulating its legal strategy in anticipation of litigation. Ultimately, these documents are protected by attorney-client privilege. Further, because these communications may include the attorney's thought processes, mental impressions, and legal theories, they would also be protected under the work product doctrine. *Sandra T.E.*, 600 F.3d at 622. Therefore, LKQ is not required to produce these documents.

For similar reasons, LKQ argues that Entry No. 78 should be produced because it includes an informational request. Doc. 186 at 3. The Court agrees for a different reason—because the protection of the attorney-client privilege extends to confidential communications made by a client to their lawyer. *See Rehling*, 207 F.3d at 1019; *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 5594474, at *4 (N.D. Cal. Oct. 10, 2013) (finding no evidence that "the report was actually reviewed by legal counsel in light of the failure of the privilege log to identify even one attorney as a recipient."). Here, the privilege log description for Entry No. 78 indicates that on September 12, 2013, a research engineer and inventor of one of the patents at issue sought to obtain "legal service and/or advice from attorney regarding utility patent protection for improving lighting image of rear combination lamp." Doc. 206-4 at 16. This communication was sent from the inventor to a member of the patent staff on Kia's intellectual property ("IP") team—a senior research engineer—not an attorney. Neither the sender nor the recipient of this communication was an attorney. In addition, there is no evidence that an attorney reviewed or relied on this communication. Accordingly, Kia must produce Entry No. 78 by May 19, 2023. To the extent any part of the document continues to be privileged in light of the above decision, Kia may redact certain portions of the document.

### B. Communications with SL Corporation

Next, LKQ argues that by disclosing communications to SL Corporation ("SL"), Kia waived its privilege. Doc. 186 at 3-6 (*citing* Entry Nos. 64-66, 69-70). The parties' dispute centers on whether the common interest doctrine protects Kia's communications and whether there is an underlying privilege to which the common interest may attach.

Beginning with the common interest analysis, "[t]he 'common interest' doctrine is not a separate privilege, in and of itself. It is a rule of non-waiver. That is, it is an exception to the general principle that disclosure to a non-privileged party of communications protected by the attorney-client privilege waives the privilege. It allows communications that are already privileged to be shared between parties having a 'common legal interest' without a resultant waiver." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. Jan. 6, 2014). The common interest doctrine is applicable when (1) parties undertake a joint effort (2) with respect to an identical legal interest, as opposed to a business or rooting interest, and (3) the withheld communications are made to further the foregoing ongoing legal enterprise. *Diamond Servs. Mgmt. Co., LLC v. C&C*

*Jewelry Mfg., Inc.*, 2021 WL 5834004, at *4 (N.D. Ill. Dec. 9, 2021). When determining whether the doctrine applies, courts consider:

> (1) whether the interest is actually a common legal interest; (2) whether the parties are or anticipate being engaged in litigation; (3) against a common adversary; (4) regarding the same or similar issues; (5) whether the parties have expressed an intent to cooperate, such as by a written agreement; (6) whether the parties have the same legal counsel; and (7) whether it is in the interest of justice and fairness to prevent disclosure of the information.

*Breuder v. Bd. of Trustees of Comm. College Dist. No. 502*, 2021 WL 949333, at *5 (N.D. Ill. Mar. 12, 2021). The party asserting the common interest doctrine and privilege bears the burden of showing that it applies and has not been waived. *Diamond Servs. Mgmt. Co., LLC*, 2021 WL 5834004, at *4.

According to Kia, SL is an authorized manufacturer and supplier of headlamps for use in new Kia vehicles and replacement lamps in Kia vehicles. Doc. 206 at 6-7. Beyond its business purpose, SL and Kia have used the same counsel in parallel litigation between LKQ and KIA in the International Trade Commission involving 20 of the 23 asserted patents in this case. *Id.* at 8. In addition, SL and Kia have entered into a common-interest agreement. *See* Doc. 206-4 at 15 (Entry No. 72). The common-interest agreement in the privilege log is dated December 7-8, 2021, nearly six months after the start of this litigation. With this background in mind, the Court finds that SL and Kia have undertaken a joint effort in various patent litigation concerning the bulk of the patents at issue in this case. While not dispositive, the fact that there is a common-interest agreement between them suggests the same. Additionally, Kia and SL are engaged in litigation, against a common adversary (LKQ), regarding the majority of the same patent issues. Furthermore, their joint efforts underlying the patent disputes are in respect to an identical legal interest (whether in the Northern District of Illinois or the International Trade Commission), not solely a business purpose. Thus, a common interest exists between Kia and SL.

Turning to the privilege analysis, the privilege log entries describe various email communications between in-house counsel on Kia's legal team and an engineering team at SL. These entries are dated May and June 2021 and concern "product testing of certain automotive lamps in preparation and anticipation of litigation against counterfeit supplier of automotive lamps." Doc. 206-4 at 13-15. Communications regarding product testing are not in and of themselves protected by the attorney-client privilege or work product protection. *See, e.g.*, *Morningware, Inc. v. Hearthware Home Prod., Inc.*, 2011 WL 4729922, at *5 (N.D. Ill. Oct. 6, 2011) (explaining defendant's "blanket assertion of privilege over all of the communications" regarding product testing is inappropriate); *MSTG, Inc. v. AT & T Mobility LLC*, 2011 WL 221771, at *9 (N.D. Ill. Jan. 20, 2011) ("technical analysis" could be restricted to facts, and the attorney-client privilege does not extend to such facts). Here, Kia's privilege log entries do not indicate evidence of legal advice and strategy. Likewise, the privilege log entries do not reference an attorney's impressions of the product testing, drafts from the tests that require their legal counsel, or overarching legal theories supported by the testing. As such, Kia has not met its burden in demonstrating the applicability of attorney-client privilege or work product doctrine. Accordingly, if the current privilege log entries are the extent of the alleged privilege, Kia must produce Entry

Nos. 64-66, 69-70 by May 19, 2023. To the extent any part of the document continues to be privileged in light of the above decision, Kia may redact certain portions of the document.

### C. Communication without an Attorney

LKQ also argues that Entry No. 79 does not involve an attorney, is not privileged, and should be produced. Doc. 186 at 6-7. In particular, Entry No. 79 is described as "[c]onfidential memorandum prepared by inventor for purposes of obtaining legal service and/or advice from attorney regarding utility patent protection for improving lighting image of rear combination lamp." Doc. 206-4 at 16. Kia clarified that the memorandum was attached to Entry No. 78, *id.*, which this Court has already found not privileged, *see supra* at 4. Likewise, Kia has not met its burden in demonstrating attorney-client privilege for this entry. Again, no attorney was included as the sender or recipient of this memorandum, and there is no evidence that an attorney reviewed or relied on this communication. Accordingly, Kia must produce Entry No. 79 by May 19, 2023. To the extent any part of the document continues to be privileged in light of the above decision, Kia may redact certain portions of the document.

### III. Sufficiency of Privilege Log Entries

LKQ next argues that after multiple opportunities to amend its privilege log, Kia has failed to meet its burden of proving privilege. Doc. 186 at 7-9. As a result, LKQ asks this Court to find that Kia has waived its privilege and should be required to produce privilege log Entry Nos. 7-8, 80, 86-88. Federal Rule of Civil Procedure 26(b)(5) requires a party claiming privilege over otherwise discoverable information to take two steps. First, the party must "expressly make the claim" of privilege. Fed. R. Civ. P. 26(b)(5)(A)(i). Second, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

As stated in this Court's standing order on privilege logs, any privilege log must be detailed enough to enable other parties to assess the applicability of the privilege asserted, and should include:

> (1) the name and capacity of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers); (2) the date of the document and any attachments; (3) the type of document; (4) the Bates numbers of the documents, (5) the nature of the privilege asserted; and (6) a description of the subject matter in sufficient detail to determine if legal advice was sought or revealed, or if the document constitutes work product.

The district court enjoys considerable discretion in determining whether a privilege log provides sufficient information to preserve the privilege, and whether it will permit a party to supplement its log to correct any inadequacies before finding a waiver. *See, e.g.*, *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 1989611, *2 (N.D. Ill. 2003) (ordering an *in camera* inspection of documents rather than ruling privilege was waived where the privilege log contained insufficient details in the description of the withheld documents); *MSTG, Inc.*, 2011 WL 221771, *11 (finding privilege had been waived because the patent holding company provided an inadequate privilege

6

log after several opportunities to provide a proper log).

### A. Patent Prosecution Communications

First, LKQ requests the production of four privilege log entries related to patent prosecution. Doc. 186 at 10 (*citing* Entry Nos. 80, 86-88). Courts in this district have found drafts of patent prosecution materials and communications related to patent prosecution containing legal advice or opinions privileged. *See, e.g.*, *Goss Int'l Americas, Inc. v. Graphic Mgmt. Assocs., Inc.*, 2007 WL 9817867, at *5 (N.D. Ill. Oct. 9, 2007) ("Documents related to the patent evaluation and/or prosecution shall remain privileged."); *TNI Packaging, Inc. v. Perdue Farms, Inc.*, 2006 WL 6654885, at *2 (N.D. Ill. Feb. 28, 2006) (finding drafts submitted by patent attorney to inventor for review and comment privileged); *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 2004 WL 1721574, at *2 (S.D. Ind. July 29, 2004) (holding letter drafted by outside patent counsel pertaining to an interview with a PTO examiner privileged because it "implicitly contain[s] legal opinion and advice").

Here, Kia described the privilege log entries as confidential memorandum or letter prepared by patent attorney for purposes of providing legal advice, opinion, or services to client regarding patent prosecution matter relating to Korean Design Patent Application No. *See* Doc. 206-4 at 16-18. The memoranda and letters were prepared by outside counsel and sent to Kia's IP team between 2011 and 2013. *Id.* Kia claims attorney-client privilege over these documents. However, in support of its argument, LKQ relies on *RTC Industries, Inc. v. Fasteners for Retail, Inc.*, 2020 WL 1433828 (N.D. Ill. Mar. 24, 2020). There, the court found the description "patent prosecution" without more, such as a patent number or application number, insufficient to identify the legal issue that was the subject of the alleged privileged communication. *Id.* at *3.

Unlike in *RTC Industries, Inc.*, for each of Kia's privilege log entries, Kia provided a more detailed description of the subject matter. Notably, Kia identified the specific patent application number addressed in the memorandum or letter prepared by the patent attorney. *See* Doc. 206-4 at 16-18. For example, Entry No. 80 identified Patent Application No. 30-2010-08608. *Id.* at 16. In addition, each entry stated that the purpose of the communication was for legal advice, opinion, or service. Moreover, either the recipient or sender of the communication was an attorney. However, entry No. 80 does not include the name of the addressee. Doc. 206-4 at 16. Instead, Kia listed the addressee as "Hyundai/Kia's Intellectual Property Team." *Id*. The Court's standing order requires the name of each individual from or to whom a document was sent. As such, Kia must amend its privilege log to include the addressee's name for entry No. 80 by May 19, 2023. In all other respects, the Court finds the privilege log entry descriptions adequate and does not require the production of these documents nor an *in camera* review.

### B. Design Patent Filing Strategy

Second, LKQ contends that Kia has waived its privilege with respect to two privilege log entries concerning its design patent filing strategy. Doc. 186 at 10-12 (*citing* Entry Nos. 7-8). In *In re Spalding Sports Worldwide, Inc.*, the Federal Circuit found that "invention records"—documents including information such as the names of inventors, descriptions of the invention, closest prior art, and dates of publication—constitute privileged communications as long as they

7

are provided to an attorney for purposes of securing legal services or assisting in a legal proceeding. 203 F.3d 800, 802-803 (Fed. Cir. 2000). Courts in this district have adopted the reasoning in *Spalding*, finding documents privileged which "appear to reveal communications involved in the strategizing process proceeding patent application." *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 537 (N.D. Ill. 2000); *see also Medline Indus., Inc. v. C.R. Bard, Inc.*, 2016 WL 307310, at *4 (N.D. Ill. Jan. 26, 2016) (finding drafts of an inventor's declaration within the ambit of the attorney-client privilege because the inventor and outside patent counsel worked together and the draft documents reflect "communications involved in the strategizing process") (internal quotations and citations omitted).

In the present case, privilege log entry Nos. 7-8 are email communications sent on December 28, 2020 between a "part leader at intellectual property team of Hyundai/Kia's intellectual property team" and in-house counsel at Hyundai/Kia's IP Legal team. Doc. 206-4 at 2. Kia described privilege log entry No. 7 as "[c]onfidential email communication between patent prosecution team and in-house counsel providing information requested by in-house counsel for purposes of obtaining opinion of counsel regarding Hyundai/Kia's design patent filing strategy." *Id*. Kia described privilege log entry No. 8 as "[c]onfidential email communication between patent prosecution team and in-house counsel providing opinion of counsel regarding Hyundai/Kia's design patent filing strategy." *Id*.

The out-of-circuit cases LKQ relies on to assert that communications concerning design patent filing strategy are only a business purpose are inapposite. *See* Doc. 186 at 11-12. In *E.I. du Pont de Nemours & Co. v. Cardinal Health 200, Inc.*, 2005 WL 8175019, at *3 (M.D. Tenn. Sept. 26, 2005), the court found that non-lawyer communications of a summary of a business meeting concerning patent strategy, which did not include requesting or dispensing legal advice, were not privileged. In *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, 2011 WL 5079531, at *3 (N.D. Cal. Oct. 24, 2011), the court held that communications regarding patent strategy not privileged where the CEO was acting in his role as CEO, not as an attorney.[5] Here, the email communications in Entry Nos. 7-8 are between a part leader and an attorney from the in-house counsel's office, acting in his or her role as an attorney—not non-lawyers. Moreover, the privilege log descriptions demonstrate that the communications concern an exchange of information in order to provide an opinion of counsel for patent filing. As such, these confidential communications seeking legal advice are privileged. *See Smithkline Beecham Corp.*, 193 F.R.D. at 537; *see also Medline Indus., Inc.*, 2016 WL 307310, at *4. Because Kia's latest privilege log entries for Nos. 7-8 are sufficient; the Court finds that Kia has not waived its privilege as to these entries. Accordingly, the Court will not require Kia to produce these two communications, and an *in camera* review will not be granted.

---

[5] LKQ also relied on the holding in *Zapmedia Servs., Inc. v. Apple Inc.*, 2010 WL 5140672, at *1 (E.D. Tex. Sept. 24, 2010), where the court without substantive explanation, found some patent-related documents privileged and others not privileged that related to business strategy. *See* Doc. 186 at 11. Rather, this case supports the fact that courts make privilege determinations on a case-by-case basis. *See Upjohn Co.*, 449 U.S. at 396-97 ("While such a "case–by–case" basis may to some slight extent undermine desirable certainty in the boundaries of the attorney-client [*sic*] privilege, it obeys the spirit of the Rules.").

IV.     *In Camera* Review

LKQ has requested that, in the alternative, the Court grant an *in camera* review to resolve any remaining privilege disputes or doubts. Doc. 186 at 2, 9. However, "[w]hether to conduct an *in camera* review to assess privilege claims is within the court's discretion." *Wier v. United Airlines, Inc.*, 2021 WL 1517975, at *3 (N.D. Ill. Apr. 16, 2021). Indeed, "[p]laintiff is not entitled to an *in camera* review simply because he requested one. Absent an initial showing that such a review is warranted, the Court will not require Defendant to undertake the burden of producing documents to the Court for an independent examination." *Crabtree v. Experian Info. Sols., Inc.*, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017). Here, the Court will not conduct an *in camera* review of the privilege log entries. Throughout this Order, the Court has resolved which entries appear privileged and which do not based on Kia's descriptions and briefing. Further, the Court has provided the parties with their next steps with respect to which documents must be produced and where redactions can be provided. Therefore, an *in camera* review is not necessary at this time.

V.      Rule 37 Fees

Finally, Kia contends that LKQ should be ordered to pay the fees incurred in defending the present motion, pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). Doc. 206 at 15. In reply, LKQ contends that it should instead be awarded fees. Doc. 229 at 14-15. However, the Court, has granted LKQ's request in part and denied in part, and the Court in such circumstances has significant discretion with regard to the award of any fees. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court ... *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.") (emphasis added). Given that some of the disputed privilege log entries were adequately drafted, but that some of LKQ's arguments on other entries have merit, the Court finds each party should bear its own costs with regards to this discovery dispute. Accordingly, the Court does not award fees to either party for expenses incurred in filing or responding to LKQ's motion.

## CONCLUSION

For the foregoing reasons, LKQ's motion to compel [186] is granted in part and denied in part.

**SO ORDERED.**

Dated: May 2, 2023

_____
Sunil R. Harjani
United States Magistrate Judge