IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LKQ CORPORATION, and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KIA MOTORS AMERICA, INC. and KIA MOTORS CORPORATION, <br><br> Defendants. | Case No. 21 C 3166 <br><br> Magistrate Judge Sunil R. Harjani |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Compel: (1) a Complete Response to Interrogatory No. 1; (2) Production of Documents Responsive to Request for Production No. 4; and (3) Production of Documents without Improper Redactions [220]. For the following reasons, Kia's motion is granted in part and denied in part.

### BACKGROUND

In this patent infringement litigation over automotive parts, Kia's counterclaims assert that LKQ infringes Kia design patents relating to headlamps and taillamps. After numerous attempts to meet and confer pursuant to Local Rule 37.2 and this Court's standing order, Kia moves to compel three categories of documents and/or information from LKQ. *See generally* Doc. 219. First, Kia requests a complete response to Kia Interrogatory No. 1 ("ROG No. 1"). *Id*. at 5-11. Second, Kia asks the Court to order LKQ to produce certain electronically stored documents regarding LKQ's products at issue that are allegedly responsive to Kia's Request for Production No. 4 ("RFP No. 4"). *Id*. at 11-14. Third, Kia seeks the production of certain documents without redactions that LKQ originally produced with redactions because they were purportedly not relevant or responsive. *Id*. at 14-15. Kia also requests reasonable expenses and attorney fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). *Id*. at 15.

LKQ responds that the Court should sustain its objections and deny Kia's motion to compel. *See generally* Doc. 241. Regarding ROG No. 1, LKQ asserts that Kia is not entitled to discovery regarding products not accused of infringing the asserted patents because such discovery is irrelevant. *Id*. at 7-12. With respect to RFP No. 4, LKQ argues that it conducted a reasonable search for responsive documents, and the remaining documents that Kia seeks are not proportionate to the needs of the case, are publicly available, and are already in Kia's possession. *Id*. at 12-15. In response to Kia's request for unredacted documents, LKQ claims its redactions of irrelevant and non-responsive documents are proper. *Id*. at 15-18. LKQ also contends that Kia's

request for fees and costs should be rejected, and instead, LKQ should be awarded its fees and costs. *Id*. at 18-19. The Court addresses each issue in turn below.

# **DISCUSSION**

## I. Discovery Requests

In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) of the Federal Rules of Civil Procedure governs. Under Rule 26(b)(1), parties are entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining the scope of discovery under Rule 26, relevance is construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Discoverable information is not limited to evidence admissible at trial. Fed. R. Civ. P. 26(b)(1); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 2021 WL 229656, at *2 (N.D. Ill. Jan. 22, 2021). The objecting party carries the burden of showing why a particular discovery request is improper. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Furthermore, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

### A. Interrogatory No. 1

To start, Kia requests a complete response to ROG No. 1 for all "LKQ products" that LKQ sells for the vehicles at issue. Specifically, ROG No. 1 seeks:

> For the period from January 1, 2015 to the present, identify by manufacturer, trademark, product name, part number, model number, LKQ's internal designations, and any other applicable designation, each of LKQ's Products that has, in whole or in part, been: (i) made in the United States by or for LKQ, (ii) used by or for LKQ in the United States, (iii) offered for sale by or for LKQ in the United States, (iv) sold by or for LKQ in the United States, or (v) imported into the United States by or for LKQ, and identify three persons associated with LKQ having the most knowledge of the subject matter of this Interrogatory.

Doc. 219-2 at 6-7. In this case, Kia defined LKQ's Products to mean "all of LKQ's headlamps or taillamps, manufactured, sold, offered for sale, or imported into the United States by or on behalf of LKQ that are sold or designed for the Kia-branded vehicles, whose vehicle model names and model years are listed in the following table[.]" *See* Doc. 220-7 at 6. The parties' dispute centers whether the response Kia seeks implicates information relevant to this litigation, and further whether non-asserted or non-accused patents are outside the scope of relevant information.[1]

---

[1] LKQ's objections to ROG No. 1 and RFP No. 4 contain a host of general and boilerplate objections. *See* Doc. 219-2 at 7-14; *see also* Doc. 220-2 at 9-10. However, LKQ's response brief only includes specific substantive objects, which are properly before the Court and discussed in this Order. Accordingly, the Court considers LKQ's unaddressed objections undeveloped arguments, which are waived. *See John K. MacIver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 614 (7th Cir. 2021) ("A party who does not sufficiently develop an issue or argument forfeits it."). Moreover, boilerplate objections are a disfavored and outdated practice, and should cease in all future discovery responses in this litigation.

Kia claims that the information is relevant to whether LKQ infringes the Kia patents at issue. Relevance, particularly in the discovery phase, is a low bar to meet. According to the Federal Rules, evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). In patent cases, courts nationwide have taken two approaches for determining the relevancy of requests for discovery of non-asserted or non-accused products. *Compare* 7 Annotated Patent Digest § 41:17.60 (collecting cases denying discovery on non-accused instrumentalities), *with* 7 Annotated Patent Digest § 41:17.50 (collecting cases granting discovery on reasonably similar products). Under the first view, discovery is limited to only those products specifically identified in the infringement contentions. *See, e.g.*, *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *2-*4 (N.D. Cal. 2014) (denying motion to compel to produce discovery on unaccused models of its products and requiring patentee to amend its infringement contentions); *Meidatek, Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 588760, *2 & *4 (N.D. Cal. 2013) (denying motion to compel discovery on products that were not specifically identified in the infringement contentions).

Under the second approach, courts have refused to set a bright-line rule. Instead, courts have allowed discovery to include non-accused products where a party either demonstrates the relevance of the non-accused products to the allegations or their reasonable similarity to the accused product. *See, e.g.*, *O.S. Sec. LLC v. Schlage Lock Co. LLC*, 2015 WL 12766160, at *2 (C.D. Cal. June 5, 2015) (finding "sensible the line of decisions that has reluctant to adopt a rule prohibiting discovery for products that are not expressly accused in the patentee's infringement contentions."); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, 2010 WL 2990753, at *2 (E.D. Wis. July 27, 2010) ("The fact that [plaintiff] has not alleged infringement of patents relating to all stages of the manufacturing process [defendant] uses does not mean that infringement of other of [plaintiff's] patents is outside the scope of discovery."); *Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 654 (E.D. Tex. 2009) ("the scope of discovery may include products 'reasonably similar' to those accused in a party's [patent infringement contentions]."); *Dr. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*, 2008 WL 1734241, at *3 (S.D. Cal. Apr. 10, 2008) (overruling relevance objections for discovery into products "reasonably similar" to the accused products where party explained how the products are interrelated); *IP Innovation L.L.C. v. Sharp Corp.*, 219 F.R.D. 427, 429 (N.D. Ill. 2003) (overruling objection where "[t]he information sought by plaintiffs is relevant to their infringement allegations and specifically, to determining whether additional Sharp products or systems infringe.").

Two cases illustrate that tailored discovery into unaccused products is permissible and sensible. In *IP Innovation*, plaintiff's motion to compel sought documents showing relevant features of potentially infringing devices—the chassis and end product model number of all models using the chips at issue. 219 F.R.D. at 428. The court overruled defendant's objection that the discovery requested was not limited to the claims because the information sought by plaintiffs was relevant to determining whether additional products or systems infringe. *Id*. at 429. The court further explained that "once plaintiffs determine the identity of all allegedly infringing models, they can seek sales information for additional specific model numbers and calculate the full level of damages to which they are allegedly entitled." *Id*.; *see also L.G. Philips LCD Co. v. Tatung Company*, 2007 WL 869700, at *1-2 (E.D. Cal. Mar. 21, 2007) (declining to limit discovery to only the accused products because the third-party discovery was relevant to "identify further

incidents of infringement regarding the patents-in-suit"). In contrast, the court in *Tesseron, Ltd. v. R.R. Donnelley & Sons Company*, 2007 WL 2034286, at *3 (N.D. Ohio July 10, 2007), acknowledged that "discovery of unidentified and unaccused systems is theoretically possible, [but] certain threshold requirements must be satisfied to permit such discovery to go forward." The court concluded that the threshold requirements were not met because discovery into unaccused and unidentified "variable data printing systems" encompassed technology that cannot infringe the patents at issue. *Id*. at *5. This decision was based on information the court had acquired after an *in camera* review, which provided evidence that the term "variable data printing system" needed to be more narrowly defined. *Id.*

Moreover, Delaware federal district courts have also grappled with this issue and have concluded that discovery into non-accused products, particularly prior to the filing of final contentions, is permissible as long as it is narrowly tailored. In particular, the court in *Invensas Corporation v. Renesas Electronics Corporation*, 287 F.R.D. 273 (D. Del. 2012) identified three non-exclusive factors to determine whether a plaintiff should be permitted to obtain discovery regarding unaccused products: (1) the specificity with which the plaintiff has articulated how the unaccused products are relevant to its existing claims of infringement (and how the unaccused products are reasonably similar to the accused products at issue); (2) whether the requested information is publicly available; and (3) the burden on the defendant to produce the requested discovery. *See also Novanta Corp., v. Iradion Laser, Inc.*, 2016 WL 4987110, at *7 (D. Del. Sept. 16, 2016) (denying motion in part where plaintiff had not articulated how discovery into a product not at issue in the litigation was related to existing infringement allegations); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, 2015 WL 13902870, at *1 (D. Del. June 30, 2015) (finding that plaintiff "has met its burden to demonstrate how these products are relevant to its infringement allegations in this case" and requiring defendant to confirm whether the products included the semiconductor die at issue). The district court in Nevada has also endorsed this approach. *Hologram USA, Inc. v. Pulse Evol. Corp.*, 2015 WL 13238450, *3 (D. Nev. Dec. 18, 2015). These factors are, in essence, another formulation of Rule 26(b)(1)'s relevancy and proportionality requirements.

Here, the Amended Complaint consists of non-infringement allegations of the patents at issue with comparisons between the Kia design patent and the LKQ part. *See* Doc. 121 at 8-31. In Kia's counterclaims, Kia identifies certain LKQ products that it alleges infringes its patent. *See* Doc. 93 at 22-46. But simply because Kia has identified certain LKQ headlamps and taillights that infringe in its claims does not bar it from exploring and adding other similar LKQ taillights and taillamps to its final contentions. As reflected in the above cases, as long as discovery is narrowly tailored to the specific parts that could infringe, a claimant is not *per se* prohibited from seeking information about other unaccused products. This second approach properly balances the concerns of relevancy and proportionality, particularly when only preliminary contentions have been exchanged.

Kia has provided a table detailing the scope of the meaning of LKQ's Products. *See* Doc. 220-7 at 6.

4

| Asserted Patent | Kia Model | Model Year | Part Description |
|---|---|---|---|
| The '773 Patent | Forte | 2009-13 | Headlamp |
| The '701 Patent | Optima | 2011-13 | Headlamp |
| The '506 Patent | Sportage | 2013-16 | Headlamp |
| The '931 Patent | Soul | 2012-13 | Headlamp |
| The '933 Patent | Forte | 2014-16 | Taillamp |
| The '963 Patent | Sorento | 2014-15 | Taillamp |
| The '218 Patent | Forte | 2014-16 | Headlamp |
| The '219 Patent | Forte | 2014-16 | Headlamp |
| The '975 Patent | Soul | 2014-19 | Headlamp |
| The '976 Patent | Soul | 2014-19 | Taillamp |
| The '977 Patent | Soul | 2014-17 | Headlamp |
| The '871 Patent | Optima | 2014-15 | Taillamp |
| The '873 Patent | Optima | 2014-15 | Taillamp |
| The '135 Patent | Sportage | 2011-16 | Headlamp |
| The '757 Patent | Sedona | 2015-18 | Taillamp |
| The '762 Patent | Sorento | 2016-18 | Taillamp |
| The '764 Patent | Sorento | 2016-18 | Taillamp |
| The '222 Patent | Optima | 2016-18 | Headlamp |
| The '223 Patent | Optima | 2016-20 | Taillamp |
| The '311 Patent | Sportage | 2017-19 | Headlamp |
| The '471 Patent | Sportage | 2017-19 | Taillamp |
| The '833 Patent | Forte | 2017-18 | Headlamp |
| The '836 Patent | Forte | 2017-18 | Taillamp |
| The '989 Patent | Sedona | 2015-18 | Taillamp |

The narrow scope of the definition of LKQ's Products limits LKQ's additional response to ROG No. 1 to asserted patents for identified Kia models, model years, and part descriptions and concern *only* either headlights or taillamp. As a result, the information Kia seeks may provide products with reasonable similarity to those in the infringement contentions. Although the parties dispute whether Kia has admitted that several non-asserted patents are patentably distinct, those arguments are better suited for motions for summary judgment. *See* Doc. 241 at 8.[2] It is sufficient that there is a sufficiently narrow relationship between the alleged infringing headlamp and taillamp patents and the discovery requested of other headlamp and taillamp products that are not yet accused of infringing and that may be reasonably similar.

Timing is also not an issue. Based on the responses Kia receives to ROG No. 1, Kia will be able to revise its preliminary contentions and update its comparison chart to include additional accused products. *See* Doc. 245-2 at 7 (comparison chart for the '833 patent). Discovery into the parties' infringement and non-infringement contentions is ongoing. The deadline for final contentions on non-infringement, unenforceability, and invalidity is August 17, 2023. *See* Doc.

---

[2] The Federal Circuit has also held that "separate patentability does not automatically negate infringement." *Glaxo Wellcome, Inc. v. Andrx Pharms., Inc.*, 344 F.3d 1226, 1233 (Fed. Cir. 2003).

98. The parties also agreed that the preliminary infringement contentions "are non-binding and can be amended at any time . . . prior to the exchange of final contentions." Doc. 219 at 8 n. 2 (*citing* Doc. 97 at 8). Because the parties are relatively early in the discovery process, they are still developing the scope of their final contentions and alleged infringing products. Thus, discovery into unaccused products, or at least the identification of them in an interrogatory response, is permissible.

LKQ's reliance on *LKQ Corporation v. General Motors Company*, 2021 WL 4127326, at *1 (N.D. Ill. Sept. 9, 2021) is unavailing. There, the court denied defendant's motion to compel because the sweeping discovery requests sought *all* replacement parts without limiting discovery to particular parts relevant to the alleged infringement. The defendant also stated it was searching for a pattern of copying unpatented products and admitted in its reply brief that it would be willing to narrow the broad requests. *Id*. On the contrary, the interrogatory before this Court does not request all parts. Not steering wheels or doors or windows. Not even interior lights. Rather, the requested product information directly relates to headlights and taillamp products for certain Kia vehicle models during a defined number of years. Thus, the documents Kia seeks are relevant to its infringement allegations. Because ROG No. 1 is narrowly tailored to the production of relevant information, Kia's motion to compel a complete response to ROG No. 1 is granted and LKQ's response is due by June 2, 2023.

### B. Request for Production No. 4

Next, Kia seeks the production of all documents responsive to RFP No. 4, which seeks "[a]ll documents and things regarding Kia vehicles and/or components thereof, including but not limited to headlamps and taillamps." Doc. 220-2 at 9. The parties' dispute is based partly on ongoing discussions where Kia presented LKQ with documents from LKQ webpages regarding the LKQ products that LKQ had not produced. *See, e.g.*, Doc. 219 at 11. In response, LKQ explained that although RFP No. 4 is overbroad, LKQ conducted a reasonable search and produced responsive documents, and to the extent additional documents exist, those documents are publicly available and already in Kia's possession. *See* Doc. 241 at 12-15.

Beginning with overbreadth, LKQ alleges that RFP No. 4 is overbroad. *See* Doc. 241 at 12. According to LKQ, Kia is not entitled to discovery regarding all parts of Kia vehicles unrelated to the suit at hand. *Id*. That, of course, is correct. *See, e.g.*, *United States Gypsum Co. v. Ectek Int'l, Inc.*, 2022 WL 1155155, at *3 (N.D. Ill. Apr. 19, 2022) ("for discovery to be relevant, it must be related to the claims or defenses at issue in a case, rather than 'its general subject matter.'") (*citing Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019)). As originally written, RFP No. 4 seeks documents that include but are not limited to headlamps and taillamps. This broad discovery for "all documents and things" is not proportional to the needs of the case to the extent it seeks information beyond headlamps and taillamps. However, Kia's reply brief provided the Court with the language it uses to narrow RFP No. 4 to seek only documents related to the accused headlamps and taillamps at issue. *See* Doc. 245 at 10-11. This modified request is related to the claims and defenses in this litigation. Accordingly, Kia's modified version of RFP No. 4 is permissible.

Turning to the substance of the productions, LKQ has already searched for and produced

thousands of pages of documents in response to RFP No. 4. Notably, LKQ laid out its search efforts in its ESI Report. *See* Doc. 241 at 12. Indeed, according to LKQ, it has already produced the webpages that Kia asks it to re-create. *Id.* at 13; *see also Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2013 WL 4010582, at *3 (N.D. Ill. Aug. 5, 2013) (based on the evidence, the court declined to question plaintiff's argument that it "conducted multiple, reasonable searches; has produced responsive documents; and is not aware of additional responsive documents that have not been produced").[3] LKQ's ESI Report provides that LKQ did not impose any time limits and searched each custodian's email repositories and OneDrive with two sets of ESI keyword searches. *See* Doc. 242-1 at 1-8. These searches included the patents at issue and resulted in the production of 2,255 documents—totaling 173,128 pages. *Id*. at 8. Beyond its ESI search, LKQ has also searched for and produced, among other items, sales date for the accused parts, images of LKQ's asserted prior art references, and screenshots of webpages with images of its products that allegedly correspond to the patented designs. *See* Doc. 241 at 14.

Moving forward, LKQ plans to produce at least 2,500 additional documents. *See* Doc. 242-1 at 8. LKQ has also agreed to produce screenshots in response to Interrogatory No. 22, which seeks "all publications, presentations, brochures, or any other literature you have ever produced referring or relating to each of LKQ's Products." Doc. 219-2 at 16; *see also* Doc. 241 at 12-13. As a result, LKQ's supplemental productions will include documents from LKQ's websites. LKQ has also agreed to produce historical website data in response to ROG No. 22, which alleviates Kia's concern about not having access to historical information. *See* Doc. 219 at 13; *see also* Doc. 241 at 12-13. Thus, LKQ has performed a reasonable search and continues to produce responsive documents, which is all that is required.

The Court orders that LKQ shall produce the remaining responsive documents to RFP No. 4 and ROG No. 22 that it has identified, including but not limited to screenshots for the relevant webpages with product-specific and historical information.[4] Given the parties' numerous attempts to meet and confer, LKQ is now aware of documents that were previously missed and, if needed, should adjust any terms or custodians to ensure it produces any remaining responsive items. Although the Court will not require a new search for responsive documents, as requested by Kia, the Court reminds the parties of their ongoing obligation pursuant to Federal Rule of Civil Procedure 26(e) to supplement discovery responses if new documents are later uncovered.[5] Furthermore, by June 30, 2023, LKQ shall file an affidavit or declaration pursuant to Rule 11 stating that its production is complete and correct and includes all non-privileged responsive documents within its clients' possession, custody, and control. In all other respects, Kia's motion

---

[3] LKQ relies on the holding in *Agerbrink v. Model Serv. LLC*, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017), which this Court finds persuasive. Specifically, "the fact that a party has located a single relevant document that the adversary failed to produce hardly demonstrates that the search was flawed. The standard for evaluating discovery is reasonableness, not perfection."

[4] Because the Court requires LKQ to produce additional web pages it has identified, Kia will not face authenticity concerns due to creating and producing documents from LKQ's websites. *See* Doc. 219 at 13.

[5] The Court will not require Kia to pay the cost of LKQ's productions. To date, the parties have borne their own expenses, and the Court sees no reason to shift the general presumption in discovery. *See* Doc. 245 at 12.

to compel with respect to RFP. No. 4 is denied.

## II. Redactions

Kia also asks the Court to require LKQ to produce certain documents without redactions.[6] LKQ acknowledges that it redacted "completely irrelevant information." Doc. 241 at 16. According to LKQ, the documents it redacted contained sensitive information related to parts for other automakers' vehicles, unrelated and irrelevant to any issue in this case. *Id*. Courts have found redactions appropriate where the information redacted was not relevant to the issues in the case. *See, e.g.*, *Abbott v. Lockheed Martin Corp.*, 2009 WL 511866, at *3 (S.D. Ill. Feb. 27, 2009) (concluding the redaction of information was "acceptable because that information is not relevant to the issues in this case and not reasonably calculated to lead to the discovery of admissible evidence"); *Spano v. Boeing Co.*, 2008 WL 1774460, at *2-3 (S.D. Ill. Apr. 16, 2008) (same); *Beauchem v. Rockford Prod. Corp.*, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (finding good cause existed to support redaction based on relevance).

Here, LKQ produced the documents containing irrelevant information with redacted portions instead of not producing the documents at all. Indeed, information related to other automakers' vehicles, including competitors, for parts not at issue in this litigation is not relevant. Thus, this form of production is permissible.[7] Most of the time, parties are perfectly content with producing the entire document, even if a portion of it has nothing to do with the claims in the case. However, and most often in litigation between competitors in a particular market, it is not unusual for a party to redact irrelevant information. Even with a protective order in place, it is difficult to ensure that a litigant-competitor won't use the knowledge they learned from that document in their business, and frankly, even more difficult to prove if they did. Often, attorneys-eyes designations solve that issue, but then causes others—such as difficulties in using them in depositions or making a fulsome report to the client about the litigation. Thus, for these reasons, it is acceptable for a party to redact irrelevant information as long as it does not affect an understanding of the relevant information.

However, Kia has alleged that many of the Excel files that LKQ produced with redactions are virtually unusable as PDFs. *See* Doc. 245 at 13. The Court finds this problematic. Therefore, LKQ must re-produce the redacted files in a form that Kia can use, whether that is the native.XLSX file or otherwise. If LKQ is unable to do so, LKQ must produce the unredacted native Excel file. Additionally, if LKQ has redacted information related to Kia headlamp or taillamp replacement parts, it must be produced. *See* Doc. 242 at 2 (LKQ stating it redacted Kia and Hyundai

---

[6] Kia also asks this Court to order LKQ to produce all email attachments to relevant, responsive emails. *See* Doc. 219 at 14. But Kia provides no caselaw or support for this argument. Other than one sentence with the request, Kia does not address this point. As a result, the Court considers this undeveloped argument waived. *See John K. MacIver Inst. for Pub. Policy, Inc.*, 994 F.3d at 614.

[7] An *in camera* review for relevance is not required. *See Hansen v. Country Mut. Ins. Co.*, 2020 WL 5763588, at *4 (N.D. Ill. Sept. 28, 2020) ("Courts should not be burdened with an *in camera* inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege.") (cleaned up).

replacement parts). Because the parties are still developing their final infringement contentions, this information may be relevant. Therefore, Kia's motion to compel redactions is denied.

### III. Rule 37 Fees

Finally, Kia contends that the Court should order LKQ to pay reasonable expenses and attorney fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). *See* Doc. 219 at 15. LKQ responds that Kia's request should be rejected, and instead, LKQ should be awarded its fees and costs. *See* Doc, 241 at 18-19. With respect to this motion, the Court has granted Kia's request in part and denied it in part. The Court, in such circumstances, has significant discretion regarding the award of any fees. *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court ... *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.") (emphasis added). Given the parties' disagreement about whether non-asserted products may be relevant to ROG No. 1, the adequacy of LKQ's search and production in response to RFP No. 4, and Kia's need for usable Excel files, the Court finds each party should bear its own costs for this discovery dispute. Accordingly, the Court does not award fees to either Kia or LKQ for expenses incurred in briefing this motion.

### CONCLUSION

For the foregoing reasons, Kia's motion to compel [220] is granted in part and denied in part.

**SO ORDERED.**

Dated: May 15, 2023

_____
Sunil R. Harjani
United States Magistrate Judge