**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LKQ CORPORATION, and KEYSTONE
AUTOMOTIVE INDUSTRIES, INC.,

        Plaintiffs,

    v.

KIA MOTORS AMERICA, INC. and
KIA MOTORS CORPORATION,

        Defendants.

Case No. 21 C 3166

Magistrate Judge Sunil R. Harjani

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff LKQ's Motion to Compel Compliance with the Court's January 12, 2023 Order and to Provide Discovery Relating to a Potential Spoliation Claim [196]. The question the Court explores in this opinion is: "What is the authority and the standard for permitting discovery on discovery?" Discovery production is akin to an honor system. We trust that attorneys uphold their professional obligations and responsibilities by following the Federal Rules of Civil Procedure to produce relevant, nonprivileged information, after a reasonable inquiry, that is within their client's possession, custody, and control. As a general rule, attorneys do not second-guess each other's processes for producing responsive information. They may request more information after an initial disclosure or argue about objections, but generally they do not need a deep dive into the collection, review, and processing methodology of their opponent. If second-guessing was the norm, the whole discovery system would break down into an endless barrage of motions based on mistrust about the opponent's production. Counsel's status as an officer of the court, combined with the possibility of serious sanctions embedded in Rules 11 and 37 and other professional disciplinary measures, serve as a deterrent to lawyers from either

intentionally or negligently failing to produce information. Trust in an adversarial process appears contradictory at first, but it is the bedrock of modern discovery practice and has worked well for decades. Occasionally, however, a court is faced with requests by parties to look behind the curtain and allow exploration of an opponent's discovery production processes, and in particular, its collection, review, and production of electronically stored information, more colloquially known as "discovery on discovery." Courts across the country have reached different conclusions about when and how they permit a party to explore the propriety of the opponents' ESI search. All, however, agree that enabling this type of discovery should be rare and certainly the exception, not the norm. In this case, the Court concludes that Rule 26(g) of the Federal Rules of Civil Procedure can permit discovery on discovery, but LKQ has not provided specific and tangible evidence of a material discovery failure for this Court to veer discovery off-track and allow an investigation into Kia's document production processes. As a result, LKQ's motion is denied.

## <u>BACKGROUND</u>

In this patent infringement litigation over automotive parts, this motion to compel concerns the parties' ongoing dispute over their ESI obligations. On August 12, 2022, the parties submitted their Joint Initial Status Report. *See* Doc. 97. There, the parties stated they "anticipate that discovery may encompass electronically stored information but do not anticipate any electronic discovery disputes at this time." *Id.* at 5. Famous last words. Unfortunately, and before this Court's involvement, between August and November 2022, document production proceeded and the parties did not agree on an ESI protocol, nor did they ask for the Court's assistance in establishing an ESI protocol at the start of discovery.

On November 14, 2022, LKQ filed a Motion to Compel Kia to Comply with its ESI Obligations. *See* Doc. 122. At that time, LKQ requested that Kia be compelled to enter into or

follow an ESI agreement. Doc. 123 at 9-10. LKQ's motion also addressed Kia's inability to locate documents from eight inventors of the patents at issue in this litigation.[1] *Id*. at 5-6.

On January 12, 2023, the Court held a motion hearing and declined to order the parties to enter into an ESI protocol. *See* Doc. 157 at 13-14 (transcript of proceedings held on 1/12/23). The Court explained that the parties should have entered into an ESI protocol before beginning discovery, not in the middle of it when much of the document collection, review, and production had already occurred. *Id*. Instead, the Court required the parties to file separate ESI disclosures describing their search process concerning custodians, timeframe, methodology of searches, and items produced. *Id*. at 14-15. The Court stated that the purpose of the ESI disclosure was to provide confidence as to how the opposing parties' searches were conducted in the absence of an ESI protocol, not to "poke holes" in the other side's disclosure. *Id*. at 15-16. The Court also ordered Kia to conduct another search of the eight inventors' records and file a Rule 11 certification affirming that a reasonable inquiry had been conducted and all documents as to the eight inventors at issue in this dispute have been turned over that are in Kia's possession, custody, or control. *See* Doc. 153.

On January 31, 2023, both parties filed their ESI disclosures, and Kia filed its Rule 11 certification. *See* Docs. 165-67. Kia described its efforts to locate responsive documents by contacting each of the inventors to produce relevant information and having Kia's in-house counsel search various databases and collaborate with other employees and teams. *See* Doc. 165. After reviewing the disclosure, however, LKQ served a Rule 30(b)(6) Notice of Deposition of Defendants. *See* Doc. 198-2. Of the thirteen topics within the notice, *eleven* appear to be directed

---

[1] The eight inventors that the Court refers to are Jae Do Han, Seo Hee Ahn, Hyung Uk Chang, Jae Kun Lee, Chi-Young Kim, Byung-Woo Kim, Woo Hyun Kim, and Hwan Wook Baek.

at Kia's ESI disclosure and Kia's document collection efforts. *Id*. at 4-6.[2]  The Court subsequently made clear that in order to proceed down this path of discovery on discovery, LKQ needed this Court's authorization to do so.

## DISCUSSION

Generally, in ruling on a motion to compel, the discovery standard set forth in Rule 26(b) of the Federal Rules of Civil Procedure governs.  Under Rule 26(b)(1), parties are entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's *claim or defense* and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added).  But this is not a motion where discovery about a party's claims or defenses is at issue.  Rather, LKQ's motion concerns discovery directed toward the information gathering and production process, what this and many other courts refer to as discovery on discovery.  The Seventh Circuit Court of Appeals has not had occasion to address the authority to allow such discovery, nor have they determined the showing required by a party before a court should permit this detour from a focus on the claims and defenses.  The Court herein establishes its framework for analyzing this issue.

## I.    The Court's Authority to Permit Discovery on Discovery

Discovery on discovery concerns the process by which a party engaged in its discovery obligations.  To be clear, the Federal Rules of Civil Procedure do *not* explicitly permit this type of discovery.  Nothing in the Federal Rules directly enables a party to serve interrogatories, document requests, or conduct depositions about a party's procedures to comply with its discovery obligations.  The Court appreciates that courts have broad authority to manage discovery, and courts may surmise that this inherent authority allows them to authorize exploration of the process by which a party conducts its discovery obligations.  In this Court's view, however, the text of the

---

[2] In reply, LKQ stated it was "willing to withdraw Topic 2 from its Rule 30(b)(6) Deposition Notice." *See* Doc. 234 at 6 n.2.

Federal Rules of Civil Procedure governs, and without an applicable rule, discovery on discovery should not be permitted. The Rules are detailed, specific, and cover all aspects of discovery practice—from the principles that govern what can be discovered (*e.g.*, relevant and proportional information) to the tools that may be used (*e.g.,* interrogatories, document requests, depositions) to the penalties for failure to comply (*e.g.*, sanctions). The federal rules on discovery leave nothing to the imagination. Courts need not, and indeed should not, veer outside the federal rules when the text is so specific as to what is and is not permitted.

Here, this Court's analysis is guided by the text of two of the most important rules that govern discovery in federal cases—Rule 1 and Rule 26 of the Federal Rules of Civil Procedure. First, Rule 1 outlines the scope and purpose of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1. It requires the court and parties "to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.*; *see also AOT Holding AG v. Archer Daniels Midland Co.*, 2021 WL 6118175, at *3 (C.D. Ill. Sept. 3, 2021) ("All discovery disputes are considered through Rule 1's lens, which requires the Court to construe and employ the Rules in a way that promotes the just, speedy, and inexpensive determination of every action."). This guiding principle ensures that courts move cases through discovery with a focus on efficiency and cost. Such a focus, however, would undoubtedly caution against veering off into an exploration of a party's discovery practices.

Second, Rule 26 provides the general provisions governing discovery. *See* Fed. R. Civ. P. 26. Rule 26(b)(1) authorizes discovery on "any nonprivileged matter that is relevant to any party's *claim or defense* and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). The language of Rule 26(b)(1) is limited to claims and defenses. *Id.* To be clear, discovery about the process by which a party searches for, reviews, and collects documents is *not* discovery

relevant to a claim or defense. Put another way, it is not evidence that a party will use to prove the elements of its case or defend against a complaint. Taking it further, it is not discovery that will lead to admissible evidence, such as providing leads to other documents, witnesses, or items that will further advance a party's proof at summary judgment or trial. Certainly, in a roundabout and somewhat tortured way, a party could argue that discovery on discovery could lead to admissible evidence because it may uncover nondisclosure of eventually responsive materials. But that concept is not in the text of Rule 26(b)(1). Rule 26(b)(1) focuses on *substance*—requiring disclosure of evidence where it pertains to the claim and defenses of that litigation and where the benefits outweigh the costs. In contrast, discovery on discovery concerns *process*—the method by which those documents were searched for and collected. Rule 26(b)(1), on its face, does not enable this kind of discovery. Thus, Rule 26(b)(1) is inapplicable to requests for discovery on discovery, which are aimed at understanding a party's process and procedure. *See, e.g.*, *Zeitlin v. Bank of Am., N.A.*, 2021 WL 5154114, at *2 (D. Nev. Nov. 5, 2021) (finding plaintiffs were not entitled to question a Rule 30(b)(6) witness on its discovery methods because "[n]ot only would such discovery be overly burdensome, as discussed below, but such discovery is precluded by Rule 26(b)(1), which limits discovery to any nonprivileged matter that is relevant to any party's claim or defense") (cleaned up); 2*46 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 2011 WL 13254283, at *4 (E.D.N.Y. Apr. 1, 2011) (denying discovery on discovery pursuant to Rule 26(b)(1) because "[n]one of these requests bear on plaintiff's underlying claim; rather, they represent plaintiff's meandering attempt to prove defendant's noncompliance with its discovery obligations."). In addition, in light of Rule 26(b)(1)'s proportionality requirements, which on its face, could lead to non-production of relevant evidence where the proportionality factors outweigh relevancy, it is

hard to fathom that the Federal Rules would allow discovery to swerve so far away from the actual substantive issues in the litigation.

Rule 37 often comes to mind when a party has failed in its discovery obligations. But Rule 37 focuses on when an attorney has fulsome information that an item was not disclosed or a court order was not followed, and thus seeks sanctions to rectify the wrong. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 966 (N.D. Ill. 2021) (analyzing tens of thousands of documents that were not timely produced under Rule 37). In these circumstances, discovery on discovery has sometimes already occurred, and the fruits of that investigation are before the court. *See, e.g.*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D. 84, 91 (S.D.N.Y. 2022) (granting attorneys' fees when plaintiffs largely succeeded on their Rule 37 motion after conducting discovery on discovery). In contrast, when a party initially requests process-related discovery, a party does not yet have the level of information warranting monetary or other sanctions under Rule 37. Moreover, numerous provisions of Rule 37 deal with awards of attorneys' fees as a remedy, not further discovery. *See e.g.*, Fed. R. Civ. P. 37(a)(5)(A) (requiring an award of fees to the victor of the motion to compel disclosure). Rule 37 is also not a great fit as it allows the court to compel discovery that falls within the confines of Rule 26(b)(1). In other words, if the discovery sought is both relevant and proportional to the needs of the case, the Court can order that deposition or document request, for example, to proceed. *See* Fed. R. Civ. P. 37 (a), (d). In contrast, a request for discovery on discovery does not fall within Rule 26(b)(1) as it is not relevant to the claims or defenses, but rather a party's discovery obligation to conduct a reasonable inquiry for responsive material. In this context, Rule 37 is not the right framework for viewing the issue. Further, Rule 37(e) explicitly governs the spoliation of ESI and has specific provisions for addressing the failure to preserve ESI, such as requiring that the information can be restored or

replaced through additional discovery and a finding of prejudice, before allowing measures to cure that prejudice, such as an adverse instruction to the jury. *See* Fed. R. Civ. P. 37(e); *see also DR Distributors, LLC*, 513 F. Supp. 3d at 860 (outlining the Rule 37(e) decision tree analysis). Nothing in that rule suggests that discovery on discovery is a possible solution to the problem of spoliation. As reflected above, Rule 37 deals with the *consequences* of a failure to preserve and/or disclose, and does not necessarily address a party's *initial* concern that an opponent's discovery production process was inadequate.

The Court finds that Rule 26(g) provides a court authority to allow this type of discovery. Rule 26(g) prescribes that every discovery request, response, or objection must be signed. *See* Fed. R. Civ. P. 26(g)(1). Rule 26(g) states that "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a *reasonable inquiry* . . . with respect to a discovery request, response, or objection, it is:"

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

*Id*. (emphasis added). In other words, Rule 26(g) requires counsel and the client to make a reasonable inquiry in responding to discovery, and by signing the response to a document request has certified as much. Courts and parties rely on these certifications and properly conclude that the reasonable inquiry standard has been met when they see such a signature. Although the "disclosure of documents need not be perfect," counsel must be diligent, make a careful inquiry, and act in good faith. *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 492 (N.D. Ill. 2018). "[The standard] is an objective standard similar to the one imposed by Rule 11. In making

8

the [reasonable] inquiry, the attorney may rely on assertions by the client and on communications with other counsel in the case as long as that reliance is appropriate under the circumstances. Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances." Fed. R. Civ. P. 26(g), advisory committee's note to 1983 amendment (internal citation omitted)

Where a certification violates Rule 26(g) "without substantial justification, the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction *may* include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3) (emphasis added). The plain language of Rule 26(g)(3) gives the judge discretion over the nature of the sanction it chooses to impose when an attorney violates the Rule. *See Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015) (explaining that the judge has discretion over the type of sanction but not whether to impose one). Notwithstanding that, "sanctions must be no greater than necessary to cure the prejudice caused by the discovery violation." *Hudgins v. Total Quality Logistics, LLC*, 2022 WL 3213233, at *6 (N.D. Ill. June 1, 2022); *see also Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1028 (7th Cir. 2019) ("A false [Rule 26(g)] certificate is a good reason for a financial penalty").

The Advisory Committee Notes to Rule 26(g) further substantiate that Rule 26(g) focuses on a party's production obligations. As reflected in those notes, "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Fed. R. Civ. P. 26(g), advisory committee's note to 1983 amendment. The certification requirement "forces an attorney to 'stop and think' about discovery responses and 'certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that

are responsive to the discovery demand.'" *DR Distributors, LLC*, 513 F. Supp. 3d at 952 (*quoting* Fed. R. Civ. P. 26(g), advisory committee's note to 1983 amendment). Moreover, "[t]he duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26(g), advisory committee's note to 1983 amendment.

Thus, according to Rule 26(g), if a court finds that a reasonable effort has not been made to provide responsive information, despite the attorney's Rule 26(g) certification requirement, the court must impose a sanction, but has authority to craft a sanction that fits the needs of the case. In that situation, a court may order additional discovery to get to the bottom of whether additional responsive documents were not produced because of a failure to conduct a reasonable inquiry in the initial production process. This could include interrogatories, requests to admit, or depositions about the document collection, review, and production process to determine the extent of any alleged discovery failures. Thus, in this Court's view, after reviewing the Federal Rules of Civil Procedure, the Court finds that Rule 26(g) allows a court to authorize discovery on discovery as a sanction when a court finds an attorney has violated the signature requirement in Rule 26(g).[3] Nevertheless, the standard for finding the initial violation, or in other words, the burden of proof needed to permit discovery on discovery, is not identified anywhere in the Federal Rules of Civil Procedure. For that, the Court turns to other authoritative sources.

---

[3] The Court recognizes but disagrees with the minority approach that finds discovery on discovery *per se* impermissible. *See, e.g.*, *Alley v. MTD Prod., Inc.*, 2018 WL 4689112, at *2 (W.D. Pa. Sept. 28, 2018) ("Other courts faced with discovery disputes regarding requests for information on document storage and retention have found that these requests are impermissible."); *Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.*, 2014 WL 10714011, at *15 (D. Minn. Dec. 5, 2014) (denying motion to compel one of the topics in a Rule 30(b)(6) deposition notice because it was "not designed to elicit information relevant to any claim and/or defense at issue in the present case, as it is only designed to elicit information concerning [defendant's] discovery efforts, [and] treads dangerously close to encroaching on attorney work product privilege."). Without analyzing the specific facts applicable to each situation, this approach would improperly foreclose discovery on discovery regardless of how egregious a discovery violation might be.

## II. The Burden of Proof Required for Authorizing Discovery on Discovery

Courts nationwide have come to some agreement about discovery on discovery, despite differences on the minutiae.  First, courts that have examined this question have recognized that discovery on discovery is the exception, not the norm, and have authorized or denied it after carefully considering the facts of a specific case. *See e.g.*, *Cardinali v. Plusfour, Inc.*, 2019 WL 3456630, at *3 (D. Nev. June 20, 2019) ("discovery on discovery is disfavored and will be closely scrutinized. There is no outright prohibition on such line of inquiry, however, and the appropriateness of such discovery turns on the particular circumstances of each case.").  Indeed, there is a consensus among courts that an inquiry into discovery on discovery should be "closely scrutinized and determined on a case-by-case basis." *Jasso v. Wells Fargo Bank, N.A.*, 2022 WL 4227332, at *2 (D. Nev. Sept. 13, 2022) (internal citations and quotations omitted).  Although courts differ on the standards they apply, courts generally agree that mere speculation of discovery misconduct is inadequate to justify a court granting discovery on discovery. *See, e.g.*, *Garrard v. Rust-Oleum Corp.*, 2023 WL 3602792, at *3 (N.D. Ill. May 23, 2023) ("If the plaintiffs think there is something nefarious going on about the defendants' location claims and document searches, they will have [to] make a proper showing for 'discovery on discovery'").  Notably, "[s]peculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008); *see also Kendle v. Whig Enterprises, LLC*, 2016 WL 898569, at *4 (S.D. Ohio Mar. 9, 2016) ("[P]laintiff may not successfully move to compel discovery on the basis of a mere suspicion that the producing party possesses additional information that it has failed to disclose."); *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) (without a showing of bad faith or unlawful withholding of documents, permitting discovery on discovery

would "unreasonably put the shoe on the other foot and require a producing party to go to herculean and costly lengths"). Thus, mere speculation or suspicion of misconduct is insufficient to justify discovery on discovery.

Courts, however, have coined different standards for the type of factual showing they require. In this district, the court in *Gross v. Chapman* set out the following standard, "those circumstances are limited to times when one party's discovery compliance has reasonably been drawn into question, or that there is 'an adequate factual basis' for an inquiry." 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (collecting cases).[4] There, the court declined to authorize discovery on discovery because "all that the plaintiffs provided [] – in a motion barely 3 pages long – was mere speculation that there must be more texts about the breakup." *Id.* at * 4; *F.F.T., LLC v. Sexton*, 2020 WL 3258623, at *3 (S.D. Ind. 2020) (explaining that if defendant's searches and productions were complete, plaintiff would be entitled to discovery on discovery because of responsive documents that plaintiff identified that defendant had not produced).

Examples of other standards include "sufficient factual basis," "colorable factual basis," and "reasonable doubt about the sufficiency of a party's response." *See, e.g., Am. W. Bank Members, L.C. v. State*, 2021 WL 5234372, at *2 (D. Utah Nov. 10, 2021) ("It makes sense to allow limited discovery on discovery where there is reasonable doubt about the sufficiency of a party's response.") (cleaned up); *Winfield v. City of New York*, 2018 WL 840085, at *3-4 (S.D.N.Y. Feb. 12, 2018) (requiring "an adequate factual basis for the collateral issue"); *Korbel v. Extendicare Health Servs., Inc.*, 2015 WL 13651194, at *15–16 (D. Minn. 2015) (granting

---

[4] *See also Hamilton v. Illinois Dep't of Hum. Servs.*, 2023 WL 1980119, at *5, n.5 (N.D. Ill. Jan. 27, 2023), report and recommendation adopted, 2023 WL 1988359 (N.D. Ill. Feb. 13, 2023) ("A long-winded letter to an agency head about a Facebook group posting complaints and discussions about that agency's purported discrimination is exactly the kind of document that courts require before allowing 'discovery on discovery.'"); *Berkeley*IEOR*, 2021 WL 4306159, at *1 (collecting additional cases).

discovery on discovery where there was a "colorable factual basis").  Regardless of the adjective courts use to modify the type of factual showing they require, each of these standards necessitates that concrete evidence be presented to the court to support the requesting party's request for discovery on discovery.

To address disputes regarding ESI, many courts have also turned to the Sedona Principles and Sedona Commentaries, which are "the leading authorities on electronic document retrieval and production." *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 918 (N.D. Ill. 2010) (cleaned up).  The Sedona Principles provide the best practices, recommendations, and principles for addressing electronic document production. *See* The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1 (2018).  Courts often look to the Sedona Principles in the context of ESI discovery for particularized discovery issues. *See, e..g.*, *Gross*, 2020 WL 4336062, at *2 (considering the principles of the Sedona Conference in the context of discovery on discovery); *AOT Holding AG*, 2021 WL 6118175, at *4 ("the comments to Sedona Conference Principle 6 are instructive").  One principle and its corresponding comment are noteworthy here.

Principle 6 of The Sedona Principles states, "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." 19 Sedona Conf. J. at 118.  As previewed above, the Court agrees that the responding party is in the best position to produce its ESI, and by certifying its production, the responding party guarantees that it has complied with the Federal Rules of Civil Procedure and conducted a reasonable inquiry.  In addition, Comment 6.b explains that "there should be no discovery on discovery, absent an agreement between the parties, or *specific, tangible, evidence-based indicia* (versus general allegations of deficiencies or mere

'speculation') of a material failure by the responding party to meet its obligations." *Id*. at 123 (emphasis added). According to the Sedona Principles, the burden is on the requesting party to prove "a *specific discovery deficiency* in the responding party's production." *Id*. at 123-24 (emphasis added). The Sedona Principles also properly identify that the failure must be material, that is, of consequence to the fact-finding process, such that further inquiry is warranted. Therefore, the Sedona Principles contemplate a standard where a party bears the burden of providing tangible evidence of a material failure in the discovery process for a court to grant discovery on discovery.

### III. This Court's Conclusions for Evaluating Discovery on Discovery Requests

After considering the text of the Federal Rules of Civil Procedure, the Sedona Principles, and case law nationwide, the Court reaches the following conclusions:

1. Rule 26(g) permits a court to allow discovery on discovery as a sanction for a party's alleged failure to conduct a reasonable inquiry in its discovery production.

2. Discovery on discovery should be the exception, not the norm.

3. Mere speculation about missing evidence is insufficient to allow discovery on discovery.

4. Court authorization should be sought via motion before a party is allowed to conduct discovery on discovery under Rule 26(g).

5. The party requesting discovery on discovery bears the burden of producing specific and tangible evidence of a material failure of an opponent's obligation to conduct a reasonable inquiry in the discovery process.

6.    If the court finds that this factual showing is sufficient, a court should select the narrowest discovery tool possible to avoid side-tracking the discovery process and to adhere to the principles outlined in Rule 1 of the Federal Rules of Civil Procedure.

## IV.    LKQ's Motion for Discovery on Discovery

LKQ brings this motion to compel due to alleged deficiencies in Kia's ESI disclosure. *See generally* Doc. 199.  LKQ asserts that Kia's ESI disclosure fails to identify custodians and disclose the search methodologies used, as required by this Court's January 12, 2023 order. *Id*. at 7-10. LKQ asks the Court to compel Kia to comply with the Court's order, or in the alternative, compel Kia to produce its designee(s) in response to LKQ's Rule 30(b)(6) Deposition Notice that focuses on Kia's document collection, review, and production process. *Id*.  LKQ also contends that because Kia refuses to explain why eight inventors do not have any responsive documents, it should be entitled to take discovery to determine whether the documents are missing as a result of spoliation. *Id*. at 11-12.  Further, LKQ claims that this motion is not the result of "poking holes" in Kia's ESI disclosure, despite this Court's previous caution, and requests its costs for bringing this motion pursuant to Federal Rule of Civil Procedure 37. *Id*. at 12-14.

Kia responds that its ESI disclosure complies with this Court's orders because it disclosed the identities of appropriate custodians and search methodologies. *See* Doc. 213 at 6-11.  Kia also contends that its Rule 11 certification already resolved the issue with respect to the eight inventors' lack of responsive documents. *Id*. at 11-16.  In particular, Kia asserts that LKQ's suspicions of ESI spoliation are factually baseless, and no relevant authority supports its demand for "discovery on discovery" *Id*.  Kia further contends that LKQ's demanded relief is inappropriate and requests its reasonable fees incurred in opposing LKQ's motion under Federal Rule of Civil Procedure 37(a)(5)(B). *Id*. at 17-18.

After initial briefing concluded, LKQ filed a supplemental brief in support of its motion [250]. LKQ explained that it deposed six of the eight inventors. *See generally* Doc. 250. Through those depositions, LKQ alleges that it solicited new evidence that demonstrates Kia did not conduct a reasonable search for documents, Kia misled LKQ as to the scope of the missing documents, Kia's witnesses contradicted Kia's arguments regarding documents that Kia had previously produced, Kia's witnesses had not described what happened to the missing documents, and Kia failed to comply with its obligations to implement a litigation hold. *Id.* In response, Kia asserts that LKQ's supplemental brief largely mischaracterizes the deposition testimony it relies on and states that it does not support LKQ's request for spoliation discovery. *See* Doc. 257 at 1-13. Kia also responded that LKQ's arguments about the documents on laptops and the litigation hold notices are without merit. *Id*. at 13-15. The Court addresses each of these issues in turn.

### A. LKQ's Allegations of ESI Disclosure Deficiencies

First, LKQ alleges that Kia violated this Court's order because Kia's ESI disclosure did not properly identify custodians or disclose the search methodologies it used. *See* Doc. 199 at 7-10. While ESI protocols are common tools used in litigation to encourage collaboration between parties in determining search terms and ESI strategies to respond to discovery requests, ESI protocols are most effective at the outset of litigation. Once discovery has commenced, the search terms have been selected, custodians identified, form of production decided, and metadata decisions have been made pursuant to a party's own obligation to comply with the discovery rules and without input from the other side. After that time, it is often too late for an ESI protocol. Given that the ship had sailed on an ESI protocol in this case, this Court ordered the next best approach to calm the waters—a disclosure by each party of their ESI process to facilitate transparency. *See* Doc. 157 at 14-15. The parties' dispute centers on what the Court meant when

it ordered the parties to file ESI disclosures describing their custodians and the methodology of their searches.

Beginning with custodians, LKQ contends that the parties were required to identify individual custodians, not "a series of vague and undefined groups." *See* Doc. 199 at 7.[5]  In response, Kia states its disclosure was adequate because as a large corporation, the ownership, custody, or control of a document is often held by a team or group (rather than an individual). *See* Doc. 213 at 8.  The Court finds that LKQ too narrowly defines what the Court meant during the January 12, 2023 motion hearing. *See* Doc. 157 at 13-14.  During the hearing, the Court ordered each party to disclose its custodians. *Id.*  But the Court did not specify that a custodian needed to be an individual or that a custodian had to be listed by name. *Id.*  Nor did either party seek clarification of this Court's definition of custodian.  A custodian can be a person *or* entity with custody, control, or ownership of ESI. *See Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.*, 2021 WL 2910814, at *9 (N.D. Ind. July 12, 2021), *aff'd*, 340 F.R.D. 570 (N.D. Ind. 2021) ("custodian (e.g., owner)"); *see also* Black's Law Dictionary (11th ed. 2019) ("A person *or institution* that has charge or custody (of a child, property, papers, or other valuables)") (emphasis added).  This Court's own model ESI protocol also contemplates that custodians may be identified by name, general job title, or description. *See* [Model] Stipulated Order for Discovery of Electronically Stored Information for Standard Litigation.  This concept reflects reality— individual employees come and go all the time, and thus a team, division, or department often can be the custodian of that sector's records.

Here, Kia listed specific teams as custodians because those teams are responsible for

---

[5] LKQ's first argument regarding the identity of "Kia's in-house counsel" is moot. *See* Doc. 199 at 7.  LKQ is now aware of the identity of this individual in part because, in the parallel ITC case, LKQ issued a corporate deposition topic where Kia's in-house counsel identified himself as the responsible individual. *See* Doc. 213 at 8; *see also* Doc. 234 at 6 ("this portion of LKQ's motion is now moot").

documents that were produced from various internal databases. *See* Doc. 213 at 9.  For example, "Kia's Vehicle Production Technology Team" is responsible for documents in the "Production Technology Portal System" database. *Id.*  As such, the team Kia names is the entity with custody, control, or ownership of the responsive ESI.  With an ESI protocol, the parties could have agreed to an alternative, more restrictive definition for custodian—which demonstrates why an ESI protocol constitutes best practice.  But that is not the case here.  In addition, the two cases LKQ relies on to assert that custodian can only mean an individual are inapposite. *See* Doc. 234 at 8. First, LKQ relies on a quote from *DR Distributors, LLC*, which states, "[t]he relevant people are the individuals who have custody of the relevant ESI or the ability to obtain the ESI." 513 F. Supp. 3d at 927.  In that case, however, the court ordered the identification of relevant people for a custodian interview, not a custodian generally for ESI disclosure purposes.  The court also did not define custodian nor conclude that a custodian could not be a team or group of people.  Second, in *County of Cook v. Bank of America Corporation*, the court only analyzed which individuals at the company would likely be in possession of legacy training materials to respond to the plaintiff's discovery requests. 2019 WL 6309925, at *6 (N.D. Ill. Nov. 25, 2019).  Again, the court did not define the meaning of custodian generally.  Accordingly, because Kia's disclosed identities of its custodians by group are sufficient, the Court will not compel Kia to provide the individual custodians' identities.

Turning to Kia's search methodologies, LKQ asserts that Kia "attempted to cloak its search methodologies behind vague assertions." *See* Doc.199 at 9.  Kia responds that it complied with the Court's directives because, for each category of documents, it identified whether someone conducted their own search, searched a specific database, or devised other appropriate search methodologies to lead to the production of responsive documents. *See* Doc. 213 at 9-11.  At the

January 2023 motion hearing, the Court ordered each party to explain "whether you use keyword searches, concept searches, whether you ask custodians to search their own stuff, whether you did searches on the whole database, all of that is encompassed in search methodology." *See* Doc. 157 at 14-15. The Court stated that keyword searches were not required, and "[c]ustodians are perfectly capable of looking for documents and producing documents." *Id.* at 16.

In the present case, Kia followed the Court's order by describing when searches were conducted, who conducted them, how they searched for documents, and what documents were collected. For instance, Kia supplied the following description: "In January and November 2022, Kia's in-house counsel contacted Hyundai/Kia's Patent Team to collect documents relating to Kia's design patent prosecution policies. Hyun Ju Lee of Hyundai/Kia's Patent Team conducted her own search within the Patent Team and confirmed that no such documents exist." Doc. 199 at 9 (*citing* Doc. 165 at 4). Here, Kia explained when documents were searched for, who searched for them, and what was found (or not found). Specifically, Hyun Ju Lee searched for design patent prosecution policies within the Patent Team and confirmed that none existed. As the Court previously stated, a custodian may conduct their own search for documents. *See* Doc. 157 at 16-17. Thus, Kia provided insight into its search process as the Court ordered. Ultimately, LKQ's complaints serve as a cautionary tale of what may result when parties fail to agree to an ESI protocol before initiating discovery. Without definitions that the parties agreed to for custodians and search methodologies, the Court will not impose more stringent requirements now after substantial document production has occurred. Therefore, Kia's disclosure of its search methodologies is sufficient, and the Court denies LKQ's motion to compel Kia to provide additional transparency or a Rule 30(b)(6) designee.

### B. LKQ's Assertions about the Inventor Documents

LKQ also requests this Court's permission to proceed with discovery on discovery to inquire as to why eight of the inventors for the patents at issue had no responsive documents and whether they are missing due to spoliation. *See* Doc. 199 at 11-12.  In Kia's ESI disclosure, Kia referred to its prior explanation of why it could not locate any responsive documents from various inventors. *See* Doc. 165 at 3 n.2.  There, as Kia explained in the parallel ITC case, Kia stated that it could not locate certain documents because the eight inventors no longer have documents for designs that were developed approximately six to fourteen years ago. *See* Doc. 136-1 at 8-9.  Kia also filed a Rule 11 certification, pursuant to Court order, which certified that Kia conducted a reasonable inquiry as to whether the eight inventors had any additional responsive documents in their possession, custody, or control. *See* Doc. 167 at 1.  Kia confirmed that it had produced all responsive documents in the inventors' possession, custody, or control. *Id*.  LKQ was not satisfied.

LKQ now requests that Kia be compelled to: (a) produce any litigation hold memos it circulated in connection with its assertion of the patents-in-suit; (b) provide a Rule 30(b)(6) designee as to the facts and circumstances surrounding why Kia no longer has the documents once stored on the computers of the eight inventors; (c) produce any communications relating to Kia's efforts to collect documents from the eight inventors; and (d) permit LKQ, when deposing the foreign inventors to inquire into the facts surrounding why Kia no longer has the documents once stored on the personal computers of the eight inventors. *See* Doc. 199 at 12.

Spoliation can only occur when there is first a duty by a party to preserve documents.  The duty to preserve documents is generally "triggered when litigation is commenced or reasonably anticipated." *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 619 (N.D. Ill. 2022). Additionally, "[t]he duty to preserve potentially discoverable information does not require a party

to retain every scrap of paper in its possession." *Haynes v. Dart*, 2010 WL 140387, at *3 (N.D. Ill. Jan. 11, 2010). Beginning with the design and development documents, according to LKQ, it has elicited testimony that under Kia's document retention policy, design and development documents are permanently retained. *See* Doc. 199 at 11. LKQ argues that because of this retention policy, LKQ deserves to know where the laptops are now, whether they were destroyed, and if so, when and at whose instruction. *See* Doc. 234 at 12. But a document retention policy is only a relevant consideration where litigation is already anticipated. *See Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998) ("inadvertent failure to comply with [document retention] regulation" did not require adverse inference sanction); *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) ("courts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent.").

In this case, the complaint was filed on June 11, 2021. *See* Doc. 1. Additionally, a subset of the patents at issue are also being litigated before the International Trade Commission ("ITC") in Investigation number 337-TA-1291. There, the investigation was pre-institution on December 16, 2021, pending before the ALJ on January 17, 2022, and pending before the commission on January 23, 2023.[6] In contrast, many of the asserted patents were filed and worked on nearly ten years before the complaint was filed or the ITC investigation began. In particular, Kia asserts that the '701 patent was filed in August of 2010, the '757 and '989 patents were filed in 2014, and the design work for the '311 patent was performed at the latest in 2015. *See* Doc. 257 at 7, 9, 12. Kia could not have reasonably anticipated litigation until the ITC investigation for many of the patents and around the time of the complaint in this case for the remainder. As such, based on the record

---

[6] *See* Certain Replacement Automotive Lamps, Inv. No. 337-TA-1291, USITC Docket No. 3583, https://ids.usitc.gov/case/8022/investigation/8111 (last visited June 8, 2023).

before the Court, Kia did not have a duty to preserve documents until early to mid-2021. Before then, Kia would not have reasonably anticipated litigation and would not have been required to preserve the inventors' work, which took place six to fourteen years before the duty to preserve attached. *See* Doc. 213 at 12-13. LKQ's spoilation claim fails the first hurdle.

LKQ also alleges that through depositions of six of the eight inventors, it has learned new information that further justifies its request for discovery on discovery. *See* Doc. 250 at 2-8. But this alleged new information falls flat. Indeed, those depositions sufficiently explained why there are no documents for the inventors to produce. First, the inventors testified that their computers would not have retained old documents if they were replaced, or if the inventors changed departments or moved countries. For example, Jae Kun Lee, the inventor of one of the patents-in-suit, testified, "I did not look for because my old PC was replaced. So my judgment is that there was no material." Doc. 251-1 at 6; *see also* Doc. 251-4 at 5 (Mun-Hyo Yoon explained, "[w]hen a new computer is, was given, I myself did not delete [documents], but sometimes the company security delete[s] it. in terms of security."); Doc. 213-8 at 11 (Hyung UK Chang stated, "When I was assigned to this department, the current department, I received a new computer. But when I was working at the research center, I had my PC, but I wouldn't be able to know where the PC is."). Likewise, Seo Hee Ahn explained that after moving to China, the company removed old unused files from the work computer because the prior project was complete. *See* Doc. 251-6 at 3-4; *see also* Doc. 213-9 at 9 (Jae Do Han testified, "I did not provide any [design drawings] because the -- my department was changed, so I did not give any").

Second, the inventors also stated that they did not have responsive emails or documents due to the frequency with which their emails were deleted and the lack of backup to a company or network drive. In particular, inventor Seo Hee Ahn stated that emails are "automatically erased

after two or three weeks." Doc. 251-6 at 5. Additionally, according to Mun-Hyo Yoon, emails were deleted "after one to two months by the company, security policy." Doc. 251-4 at 4-6; *see also* Doc. 214 at 5 (Hwan Wook Baek was asked why he did not find any documents related to this litigation and responded, "It's been so long, and for the security -- for security reasons, it is supposed to be deleted [when the project is over]."). With regard to a lack of backups, Yun Seok Oh explained that his computer was not backed up to a Hyundai or Kia network, so his design documents were not stored on any network drive. *See* Doc. 251-5 at 3. Similarly, Mun-Hyo Yoon testified that he did not store documents on a network or shared drive. *See* Doc. 251-4 at 4-6. Because many of these older design and development documents were not backed up to a network drive, various inventors explained that after searching their computers and materials, they were unable to locate responsive documents. For instance, Jae Kun Lee stated, "I was trying to look for them, but they are old data, so I was not maintaining those documents . . .I was looking for them, but I couldn't find them." Doc. 213-10 at 5-6.

Here, the inventors at issue adequately explained that they did not retain their old documents under no fault of their own or intentional destruction. As the Seventh Circuit has held, "the crucial element is not that the evidence was destroyed but rather the reason for the destruction." *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982) (finding the facts surrounding the destruction of notes did not support an inference of bad faith); *see also Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) ("A party destroys a document in bad faith when it does so for the purpose of hiding adverse information.") (internal citations and quotations omitted). In this case, the company appears to have either deleted the documents pursuant to its internal procedures or the documents no longer exist due to a lack of backup procedure. In the end, the lack of responsive documents in the inventors' current

possession is not due to the inventors' decision to delete documents. In addition, there is no evidence that the process of assigning new computers or removing documents due to a department or geographic change resulted from the company's attempt to avoid discovery obligations. Likewise, the lack of more stringent backup procedures or email archive policies does not appear to be to evade discovery obligations. Instead, any missing design documents appear to be a result of routine policy and procedure—while the company was not under a duty to preserve for this litigation.[7]

In addition, the Court ordered Kia to file a Rule 11 certification to affirm that it conducted a reasonable inquiry regarding the eight inventors, and Kia complied with that order. *See* Doc. 153; *see also* Doc. 166 (Kia's Certification Under Rule 11). The purpose of a Rule 11 certification is that the "signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 542, (1991). Indeed, "[t]he essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Id*. at 546. Pursuant to Rule 11, "attorneys and parties that present pleadings to the court for improper purposes, based on frivolous arguments, or arguments that lack evidentiary support, can be sanctioned through both monetary and nonmonetary

---

[7] LKQ also relies on the testimony of Yong Hee Han, Kia's Rule 30(b)(6) designee about Kia's consumer clinics. *See* Doc. 250 at 3; *see also* Doc. 251-2 at 4 ("if there's one project I'm working on, there are many documents generated from me and hundreds and thousands of documents from related departments. So that's why I just submitted the items I was requested to submit."). But this testimony is unrelated to LKQ's motion requesting information about the inventors' missing documents because Mr. Han is not an inventor of any of the asserted patents and does not have information about why certain inventors have no responsive documents. *See* Doc. 257 at 3-7. Indeed, Mr. Han testified that he produced planning documents, reports, security-related papers, and contracts for his team's research projects. *Id*. at 4 (citations omitted). Kia has also agreed to produce any remaining responsive documents that Mr. Han testified about. *Id*. at 5-6.

directives." *Cage v. Harper*, 2020 WL 1248685, at *6 (N.D. Ill. Mar. 16, 2020) (*citing* Fed. R. Civ. P. 11). As such, Kia's certification to the Court affirmed that Kia completed a reasonable inquiry into the alleged missing documents from the eight inventors at issue. Based on the facts before the Court, the Court need not second guess Kia's certification. Kia is well aware of its duty of candor and the sanctions that it could face in the event that evidence is later presented that it misled the Court.

Moreover, the Court also finds instructive the fact that Kia has already produced the design and development documents that LKQ claims should have been on the eight inventors' computers. According to Kia, it has produced "ample 'design and development' documents for each design patent at issue—including CAD [computer-aided design] drawings[.]" Doc. 213 at 12. Notably, these documents were separately maintained in Kia's PLMS database and produced from the database directly. *Id*. Therefore, even though the inventors no longer personally maintain possession, custody, or control of the design and development documents, these documents were not lost in oblivion. The cases LKQ relies on to assert otherwise are inapposite. *See* Doc. 234 at 12. In *Urban Textile, Inc. v. Deb Shops SDW, LLC*, in a two-paragraph decision, the court held that an *ex parte* application to compel further responses "appears to possess little substantive merit." 2014 WL 12564101, at *1 (C.D. Cal. July 18, 2014). The court decided that although defendant's responses to the discovery requests appeared adequate, if plaintiff was dissatisfied, then plaintiff could take a Rule 30(b)(6) deposition. *Id*. There, the court reviewed an emergency motion and did not analyze the issue through the lens of discovery on discovery as this Court has done. The other case LKQ relies on is *Navajo Nation v. Urban Outfitters, Inc*, 2014 WL 11511453, at *3 (D.N.M. Nov. 24, 2014). In that case, the court permitted a continued Rule 30(b)(6) deposition because the witness was inadequately prepared on the topic at the initial deposition. *Id*.

Again, the factual circumstances underlying the holding in *Navajo Nation* are not at issue before this Court. Rather, Kia produced the documents that LKQ requested, and no rule requires possible duplicative versions of the same document to be produced. Kia has provided a satisfactory reason for why the inventors no longer have the relevant documents and explained that it has already produced responsive design and development documents. In contrast, the information LKQ has provided the Court does not rise to the level of specific, tangible, and concrete evidence of a material failure of Kia's obligation to conduct a reasonable inquiry in the discovery process. As the Court has reiterated, mere speculation about missing evidence is insufficient to allow discovery on discovery, which is all that LKQ has provided the Court. Accordingly, LKQ has failed to satisfy its burden, and the Court denies LKQ's motion to compel a Rule 30(b)(6) designee to testify, the production of communications relating to Kia's efforts to collect documents from the eight inventors, and permission for LKQ to ask Kia's foreign inventors about the missing documents.

The Court next considers LKQ's request to compel Kia's litigation hold memos. "A litigation hold notice is a communication, either written or oral, that puts clients on notice of their duties to preserve documents within their possession, custody, or control that are relevant to the litigation and further directs the clients how to fulfill those obligations." *DR Distributors, LLC*, 513 F. Supp. 3d at 930. A litigation hold memorandum or notice is not evidence of a party's claims or defenses. Instead, a litigation hold directs a party to ensure that documents are preserved and retained. Therefore, a litigation hold memorandum or notice falls within the type of non-substantive information that constitutes discovery on discovery. This Court has already outlined the standard it requires for discovery on discovery—tangible evidence of a material discovery violation, not mere speculation.

LKQ again provides nothing more than mere speculation that Kia did not institute a litigation hold in this case. LKQ contends that testimony from two inventors of the patents at issue provides evidence that they did not receive a litigation hold. *See* Doc. 250 at 7-8. However, Kia sufficiently rebuts this testimony, confirms that other inventors recalled receiving the litigation hold, and affirms that it did issue a litigation hold. *See* Doc. 257 at 14-15. For example, Kia cites testimony where individuals confirmed that they received a memo, email, or other document asking them to save documents related to a specific vehicle. *Id*. at 15 (collecting testimony). As such, Kia has provided evidence that it issued a litigation hold. *See Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 454 (7th Cir. 2000) ("[I]t goes without saying that attorneys should make every effort to ensure that their statements to us (or any court, actually) are accurate."). In addition, the one out-of-circuit case that LKQ relies on to support granting its motion to compel the production of a litigation hold notice is not persuasive. *See* Doc. 199 at 11. In *Bagley v. Yale University*, the court relied on various facts, including "an unreasonable delay in issuing the notices and a subsequent failure to implement and monitor the recipients' responses." 318 F.R.D. 234, 241-42 (D. Conn. 2016). In this case, LKQ has provided no evidence that Kia delayed issuing a litigation hold or failed to implement or monitor the hold. Instead, the evidence before the Court is based on speculation and testimony that Kia has rebutted in response. Accordingly, the Court denies LKQ's motion to compel Kia's litigation hold memos.

Finally. each side requests their fees under Rule 37 in bringing the motion (in LKQ's case) or having to respond to the motion (in Kia's case). The Court has ruled in favor of Kia. Under Rule 37(a)(5)(B), if the court denies a motion to compel, the court "must" order the loser to pay the winner's reasonable expenses incurred in making the motion unless an exception applies. *See* Fed. R. Civ. P. 37(a)(5)(B). However, although an award of fees to Kia could very well be

warranted here, the Court has viewed this motion through a different lens than the parties. A request for discovery on discovery is actually a request for a specific type of sanction under Rule 26(g). As a result, Rule 37 is inapplicable to the present dispute. Nevertheless, the Court hopes that there are some lessons learned here for the parties and counsel in future litigation in this and other cases.

## **CONCLUSION**

For the foregoing reasons, LKQ's motion to compel [196] is denied.

**SO ORDERED.**

Dated: July 6, 2023

_____
Sunil R. Harjani
United States Magistrate Judge